THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. FRANK E. BAKER, Appellee.

*Opinion filed June 20, 1988.*

Neil F. Hartigan, Attorney General, of Springfield, and John F. Dahlem, State's Attorney, of Virginia (Roma Jones Stewart and Shawn W. Denney, Solicitors General, and Terence M. Madsen and Nathan P. Maddox, Assistant Attorneys General, of Chicago, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Gary R. Peterson, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

On July 22, 1986, defendant, Frank E. Baker, pleaded guilty to driving under the influence of alcohol (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(a)(2)). Pursuant to section 11—501(e) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(e)), the circuit court of Cass County ordered defendant to undergo a professional evaluation to determine if an alcohol or other drug abuse problem exists and the extent of such problem. This court takes judicial notice that, by amendments prior to defendant's arrest and conviction, the

General Assembly renumbered the paragraphs in the statute and as a result section 11—501(e) became 11—501(f). Defendant later filed a motion to rescind the order, alleging that section 11—501(f) was unconstitutional because defendant, indigent, is forced to pay a fee to a private industry and is forced to testify against himself in violation of the fifth amendment of the United States Constitution and article I, section 10, of the Illinois Constitution (U.S. Const., amend. V; Ill. Const. 1970, art. I, §10). On August 26, 1986, the court denied defendant's motion, and at his own request, the court found defendant in contempt of court and sentenced him to seven days in jail with the opportunity of purging himself of contempt by complying with the order. The sentence was stayed pending appeal.

The appellate court found that "negative facts and conclusions contained in an alcohol evaluation could cause a court to impose a more severe sentence on an individual convicted of driving under the influence of alcohol than it would impose absent knowledge of the matters stated in the alcohol evaluation." (158 Ill. App. 3d 756, 757.) The appellate court stated that since the fifth amendment is applicable and there are so many driving-while-intoxicated cases each year, it would be impractical for the court to determine case by case whether the questions asked will in some way incriminate the defendant. The appellate court also held that defendant need not attend the evaluation with an attorney and refuse to answer the questions. The People appealed and we allowed the petition for leave to appeal pursuant to our Rule 315 (107 Ill. 2d R. 315).

The People argue that section 11—501(f) is constitutional and does not violate the fifth amendment of the United States Constitution and article I, section 10, of the Illinois Constitution of 1970. Further, since the sec-

tion has not been declared unconstitutional, the section must be complied with by defendant.

The significant issue before this court is whether or not a defendant can claim the fifth amendment when answering questions on a professional evaluation needed for sentencing after the defendant has pleaded guilty to driving while intoxicated. The issue requires an analysis of not only the fifth amendment privilege but also the sentencing phase of a trial.

Article I, section 11, of the Illinois Constitution of 1970 provides, in part, that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) The General Assembly also incorporated that policy into the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1001—1—1 *et seq.*), which provides:

> "The purposes of this Code of Corrections are to:
>
> (a) prescribe sanctions proportionate to the seriousness of the offenses and permit the recognition of differences in rehabilitation possibilities among individual offenders;
>
> (b) forbid and prevent the commission of offenses;
>
> (c) prevent arbitrary or oppressive treatment of persons adjudicated offenders or delinquents; and
>
> (d) restore offenders to useful citizenship." (Ill. Rev. Stat. 1987, ch. 38, par. 1001—1—2.)

Once a defendant has either been found guilty or pleaded guilty, the court shall hold a sentencing hearing to impose an appropriate sentence. Whether the court follows section 11—501(f) of the Illinois Vehicle Code or section 5—4—1(a) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—4—1(a)), it is necessary for the defendant prior to sentencing to undergo a professional or social evaluation to determine if

an alcohol or other drug abuse problem exists and the extent of such a problem. However:

"Whether a statutory provision is to be considered mandatory or merely directory depends upon the drafters' intent. An important aid in determining whether a provision is mandatory or directory is the form of the verb used in the statute. [Citation.] *** Generally, the use of the word 'shall' is regarded as indicative of a mandatory intent. [Citations.] We recognize, however, that this is not an inflexible rule; the statute may be interpreted as permissive, depending upon the context of the provision and the intent of the drafters. [Citation.]" (*People v. Youngbey* (1980), 82 Ill. 2d 556, 562.)

In *Youngbey*, this court found that the word "shall" coupled with the negative "not" renders the requirement of section 5—3—1 that the defendant shall not be sentenced before a written presentence report of investigation is presented and considered by the court mandatory. Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—1.

In this case, this court finds that a professional evaluation prior to sentencing is not a mandatory requirement. This court notes that although both statutes, sections 11—501 and 5—4—1(a), use similar language (section 5—4—1(a) uses the word "must" and section 11—501 uses the word "shall"), the difference in the language does not equate to a difference in intent. Neither section 11—501 nor section 5—4—1(a) contains a negative word and, as such, the sections reveal a directory intent and not a mandatory one.

The requirement of a professional evaluation prior to sentencing is not required in light of other sections of the Code regarding sentencing. When a defendant has been committed to prison, the Department of Corrections may order the defendant to undergo a social evaluation to determine the defendant's "medical, psychological, educational and vocational condition and history,

*including the use of alcohol and other drugs."* (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 1003—8—2(a).) Whether or not a defendant submits to the evaluation prior to sentencing, the circuit court has the authority as part of sentencing to order the defendant to undergo a professional evaluation, to stay any term of imprisonment and later to modify that sentence within 30 days following entry of judgment according to the results of the evaluation. (107 Ill. 2d Rules 604(d), 605(b), 606(b).) The circuit court's authority lies within its sound discretion to determine and impose an appropriate sentence. *(People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93.) The authority of the circuit court to modify its order and the requirement of a professional evaluation must be read in conjunction with the responsibility of the circuit court to promptly dispose of all the business before it. (107 Ill. 2d R. 63(A)(5).) Without these provisions, a defendant may infringe upon the circuit court's authority to control its docket. A defendant should not benefit from his own defiance of the criminal justice system. (See *People v. Flores* (1984), 104 Ill. 2d 40, 50.) Thus, this court finds that the requirement of a professional evaluation prior to sentencing is a permissive one.

Defendant, however, argues that a professional evaluation would violate his fifth amendment right. The fifth amendment provides in part: "No person *** shall be compelled in any criminal case to be a witness against himself ***." (U.S. Const., amend. V; see also Ill. Const. 1970, art. I, §10.) The purpose of the amendment is to assure an individual that he cannot be compelled to produce evidence which may be used against him. The evidence included in this protection is not only evidence leading to a criminal conviction but also evidence which would furnish a link in the chain of evidence that could lead to prosecution, including evidence which the individual reasonably believes could be used against him in a

criminal prosecution. (*Maness v. Meyers* (1975), 419 U.S. 449, 461, 42 L. Ed. 2d 574, 585, 95 S. Ct. 584, 592.) The right developed in response to certain historical practices, such as the ecclesiastical inquisition and the proceedings of the Star Chamber of which both practices " 'placed a premium on compelling subjects of the investigation to admit guilt from their own lips.' " (*Andresen v. Maryland* (1976), 427 U.S. 463, 470, 49 L. Ed. 2d 627, 636, 96 S. Ct. 2737, 2743, quoting *Michigan v. Tucker* (1974), 417 U.S. 433, 440, 41 L. Ed. 2d 182, 190, 94 S. Ct. 2357, 2362; *Culombe v. Connecticut* (1961), 367 U.S. 568, 581-82, 6 L. Ed. 2d 1037, 1045-46, 81 S. Ct. 1860, 1867.) The fifth amendment privilege, as reiterated in *Estelle v. Smith* (1981), 451 U.S. 454, 68 L. Ed. 2d 359, 101 S. Ct. 1866, "does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." (451 U.S. at 462, 68 L. Ed. 2d at 368, 101 S. Ct. at 1873.) The protection afforded by the privilege is "as broad as the mischief against which it seeks to guard." 451 U.S. at 467, 68 L. Ed. 2d at 372, 101 S. Ct. at 1875.

The right to claim the fifth amendment in this case must be analyzed in the context of a sentencing hearing and a professional evaluation. At sentencing, the circuit court may conduct a hearing, largely unlimited, regarding either the kind of information it may consider or the source from which it may come. (*Roberts v. United States* (1980), 445 U.S. 552, 556, 63 L. Ed. 2d 622, 628, 100 S. Ct. 1358, 1362.) The duty of the sentencing court is to assess the character of the defendant, the seriousness of the offense and the rehabilitative potential of the defendant. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—4—1.) In doing so, the court must weigh factors in mitigation "having due regard for the character of the offender, the nature and circumstances of the offense and the public

interest." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.1.) Where the court finds that a term of imprisonment or a more severe sentence is necessary, the court must weigh the factors in aggravation. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2.) These statutory requirements establish a duty upon the sentencing court to weigh all factors prior to imposing a sentence. The professional evaluation is but a small part of all the evidence a sentencing court may consider. Furthermore, the evaluation is but a part of the unlimited types of and sources of evidence the court may consider.

Even without the evaluation, the sentencing court can determine the appropriate sentence and fine. An individual found guilty of violating section 11—501 is guilty of a Class A misdemeanor. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(c).) Those individuals found guilty of a second or subsequent violation of section 11—501 within five years, as in this case:

> "shall be mandatorily sentenced to a minimum of 48 consecutive hours of imprisonment or assigned to a minimum of 10 days of community service as may be determined by the court. The imprisonment or assignment shall not be subject to suspension nor shall the person be eligible for probation in order to reduce the sentence or assignment." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(c).)

A Class A misdemeanor conviction has a potential of less than one year's imprisonment. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—3(a)(1).) Further, the defendant who has a previous driving under the influence conviction is not eligible for supervision in lieu of imprisonment but that fact does not prohibit the court from imposing a term of probation. (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—6—1(d), (a).) Based on a conviction for a second or subsequent offense, within five years, the Secretary of State has the authority to revoke the license of any individual convicted of violating section 11—501 of the Illi-

nois Vehicle Code. (Ill. Rev. Stat. 1987, ch. 95, par. 6—205(a)(2).) In addition to the above-mentioned penalties, the court may also impose a fine not to exceed $1,000. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—9—1(a)(2).) Without the evaluation, the sentencing court may impose either a one-year imprisonment or one year of probation, and a $1,000 fine, and the Secretary of State will revoke his driver's license for one year.

The only matter left for the court's determination without receiving information from defendant himself is the type of treatment necessary to restore the defendant to a useful citizen and to protect the public. The sentencing court needs at this point the professional evaluation prepared by the statutorily approved counseling center.

Unlike a presentence investigation, the professional evaluation only refers to gathering of information regarding one aspect of a defendant's character, his use or abuse of drugs or alcohol. Since the sentencing court is not an expert in the field, it cannot determine whether or not a defendant is a social drinker or, more terrifying, a problem drinker who likes to drive drunk. The evaluation supplies the court with information regarding a defendant's potential for rehabilitation. Driving is a privilege and when combined with alcohol it is a lethal weapon. However, since driving is a vital part of an individual's freedom to travel, whether to work or for recreation, it is essential for the court to determine a defendant's extent of alcohol or drug use. The evaluation assists the court in determining a proper course of treatment necessary to restore a defendant to a useful citizen and to restore a vital privilege of everyday life. In cases such as the one at bar, the evaluation can also supply mitigating factors. With the individual driver's abstract before the court, the court has already the essential factors in aggravation, any second or subsequent section 11—501 violation as well as other moving violations. The

court at that point has factors regarding a defendant's potential for rehabilitation, and ability to obey the law, especially the Illinois Vehicle Code. The court may sentence a defendant to the maximum penalty unless the evaluation reveals reasons for less than maximum. Thus, this court finds that defendant's fear that the evaluation could impose a heavier penalty and violate his fifth amendment privilege is without merit.

Finally, this court must determine whether or not the fifth amendment privilege against self-incrimination is applicable at professional evaluation and, if so, what procedure must defendant follow.

In *Minnesota v. Murphy* (1984), 465 U.S. 420, 79 L. Ed. 2d 409, 104 S. Ct. 1136, the Supreme Court held that the fifth and fourteenth amendments did not prohibit the introduction into evidence of the defendant's admissions to his probation officer in the defendant's subsequent murder prosecution. In *Minnesota v. Murphy*, the defendant admitted to his probation officer that he had committed a rape and murder in 1974. The defendant's admission was used in a subsequent trial regarding that murder. The Supreme Court found that the defendant's duty to appear and to answer truthfully the questions propounded by his probation officer was no different than the duty of an "ordinary witness at a trial or before a grand jury who is subpoenaed, sworn to tell the truth, and obligated to answer on the pain of contempt, unless he invokes the privilege and shows that he faces a realistic threat of self-incrimination." (465 U.S. at 427, 79 L. Ed. 2d at 419, 104 S. Ct. at 1142.) The Court found (a) that the totality of the circumstances did not exhibit a coercive atmosphere overpowering the defendant's free will; (2) that the right was not self-executing because it was a noncustodial setting; (3) that the mere fact that questions about his prior criminal conduct and his inability to seek counsel before the meeting did not

distinguish his situation from those suspects who are questioned in a noncustodial setting and grand jury witnesses who are aware of the scope of an investigation or that they are considered potential defendants, and (4) that although there were no observers to guard against abuse or trickery, the defendant knew that his statements would be made available to the police.

In this case, the professional evaluation is in a noncustodial, noncoercive situation where defendant will be expected to answer questions about his prior activity regarding his drinking and driving habits as well as his prior DUI convictions. Whether or not defendant answers these questions, the sentencing court as well as the prosecution will have a driver's abstract revealing all of his prior moving violations. Since defendant is not coerced or his free will overpowered, whatever defendant admits can be used against him and, as such, his fifth amendment right is not self-executing. Defendant knows prior to the evaluation that his answers and eventual evaluation are part of the court's record and as such he cannot expect total confidentiality. However, nothing in this opinion or in *Minnesota v. Murphy* precludes defendant from asserting his fifth amendment right, but he must do so in a timely and proper manner.

In order to claim the privilege, an individual must claim it during the examination and as questions are asked. (*People v. Cooper* (1937), 366 Ill. 113, 119.) The individual must assert the claim only in response to potentially incriminating questions. (*People v. Rimicci* (1968), 97 Ill. App. 2d 470, 479.) Furthermore, the individual must either timely assert the privilege or be prepared to establish that the privilege was self-executing. (*Minnesota v. Murphy*, 465 U.S. at 428-29, 79 L. Ed. 2d at 420, 104 S. Ct. at 1143.) The individual claiming the privilege must have a reasonable ground to believe that his answers to questions asked might tend to incriminate

him. (*Pennsylvania Tank Line v. Jordan* (1930), 341 Ill. 94, 99, *transferred* (1931), 260 Ill. App. 397.) Once the individual claims the privilege, it is for the circuit court to determine if under the particular facts there is a real danger of incrimination. (*Hoffman v. United States* (1951), 341 U.S. 479, 486, 95 L. Ed. 1118, 1124, 71 S. Ct. 814, 818.) It is not for the witness alone to determine. *Rogers v. United States* (1951), 340 U.S. 367, 373-74, 95 L. Ed. 344, 349, 71 S. Ct. 438, 442.

In this case, defendant would have to go to the professional evaluation and claim his privilege if he reasonably believes that his answer will incriminate him. In light of this court's findings, we find that defendant in this case does not have a reasonable belief that his answers will incriminate him but rather his answers could justify mitigating his potential sentence. Since this court does not have the evaluation questions and defendant's answers, we can only conclude that defendant's belief that the answers to the questions would incriminate him was not reasonable.

Thus, this court finds that in this case defendant did not have a reasonable belief or fear of incrimination. Without more evidence regarding the potential incriminating nature of the questions, this court finds that defendant's fifth amendment claim was without merit. In light of these findings, this court finds that counsel need not be present at the evaluation and that the evaluator need not inform defendant of his *Miranda* rights. See *Minnesota v. Murphy* (1984), 465 U.S. 420, 79 L. Ed. 2d 409, 104 S. Ct. 1136.

This court finds that since the requirement of a professional evaluation prior to sentencing is permissive, the circuit court may sentence defendant without the evaluation, stay the sentence for 30 days until completion of the evaluation and modify the sentence accordingly. In light of these findings, this court finds that the circuit

court could not find defendant in contempt for asserting his fifth amendment right. Furthermore, to properly invoke the fifth amendment, defendant must go to the evaluation and invoke the fifth as questions are asked. At that time he must have more than a mere belief that his statements will incriminate him, thereby potentially increasing his sentence. If defendant does invoke the fifth, the circuit court must determine whether or not his fear is reasonable.

In conclusion, this court finds that the circuit court improperly found defendant guilty of contempt for asserting his fifth amendment privilege. The circuit court is ordered to proceed to sentencing with or without defendant's cooperation and to sentence defendant according to the findings expressed in this opinion.

For the foregoing reasons, the judgment of the appellate court is reversed, and the cause is remanded to the circuit court of Cass County for further proceedings not inconsistent with this opinion. The circuit court is reversed in part regarding the judgment and sentence for contempt.

*Appellate court reversed;*
*circuit court reversed in*
*part; cause remanded.*