THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LADELL LOCKETT, Defendant-Appellant.

First District (1st Division)    No. 1—91—0772

Opinion filed March 15, 1993.—Rehearing denied March 23, 1994.

Rita A. Fry, Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Judith M. Pietrucha, Special Assistant State's Attorney and Renee Goldfarb, Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Defendant, Ladell Lockett, was charged by indictment with the murder of Tony Parker Wade (hereinafter Parker) and thereafter tried by a jury and found guilty. Defendant now appeals his conviction and 27-year sentence, alleging that: (1) his sixth amendment right to cross-examine witnesses was violated when the trial court limited questioning of State witness Angelo Bonds (hereinafter Bonds) by allowing Bonds to assert his fifth amendment right against self-incrimination; (2) the prosecutor's remark made during closing argument about defendant's failure to call a witness was erroneous and constitutes reversible error; and (3) his sentence must be vacated on the basis that the trial court improperly considered in aggravation defendant's receipt of public aid and unemployment status at the time of his arrest.

Prior to trial the trial court entertained several motions *in limine* and then proceeded to question the prospective jurors. The matter was continued for trial to January 15, 1991; however, before commencing trial, defense counsel informed the court that she was in the process of obtaining the parole records for State occurrence witness Bonds and she believed there was an outstanding warrant against him for violation of his parole. Defense counsel suggested that the court appoint counsel to represent Bonds before he testified in order to alleviate any fifth amendment problems. The State then acknowledged that the parole office had issued a warrant for Bonds; yet, it responded that no deal had been made with him concerning the warrant and that he was in court and ready to testify as a witness.

The court stated that the defense should be allowed to question Bonds regarding the alleged parole violations in order to test his credibility. After a short recess, and ensuing discussion as to whether or not the parties would stipulate that Bonds violated parole by not reporting to his parole officer, which stipulation defense counsel rejected, the court ruled that Bonds would be appointed counsel. The court also determined that Bonds could be questioned about the alleged parole violation and whether he knew that he was facing possible imprisonment.

Subsequently, the appointed counsel for Bonds informed the court that Bonds had been advised not to answer any questions regarding his parolee status and that he was invoking his fifth amendment right. The jury was sworn and the parties presented opening statements during which the State mentioned that Bonds had problems with his parole officer. During his opening statement, defense counsel told the jury that it would hear about Martell Quinn.

Parker's cousin testified as a life and death witness. Bonds then testified that he was currently on parole from a robbery conviction, acknowledged two juvenile convictions and stated that he was on probation on December 10, 1988, the date Parker was killed. Bonds stated that on the day in question he and Parker walked to the park fieldhouse approximately two blocks from Parker's home to shoot baskets (basketball). They stayed at the park about 15 minutes and then proceeded to a restaurant a block and a half from the fieldhouse. As they were walking back to Parker's house, they encountered defendant and a man known to Bonds only as "Martell." Parker said to Martell, "I heard you was gonna have something done to me," and when Martell did not respond, Parker said he would "beat his butt if [Martell] tried to have something done to him." Parker and defendant never exchanged words during this time.

Bonds and Parker then proceeded toward the park, and as they were crossing the street, Bonds saw defendant running behind them about 30 feet. Bonds, hearing a shot, turned to see where it came from, but when he did not see anyone he and Parker continued walking. Bonds then heard several shots and they both started to run. At that time, he saw defendant only three feet away pointing a gun at them and he and Parker ran toward the fieldhouse. Bonds reached the fieldhouse first and opened the door. Parker, who was bleeding, fell and did not get up. When the police arrived at the scene, Bonds told them what happened.

Later, Bonds was picked up by the police and taken to the station where he was placed in an unlocked room and remained the entire night. He was taken to the station again on December 15, 1988, and spoke to an officer several hours prior to viewing a lineup which included the individual whom he identified as Martell. Bonds also was picked up and taken to the police station on January 12, 1989, at which time he testified before the grand jury.

In the interim, Bonds was charged as an adult in an unrelated incident for armed robbery and jailed in a juvenile facility until December 11, 1989, at which time he pled guilty. Following the guilty plea, Bonds was imprisoned until his subsequent parole in May 1990. Bonds acknowledged that he had received instructions to visit his parole officer and that he had signed a release agreement. However, the trial court did not allow defense counsel to question him about whether he had in fact violated the conditions of his parole.

Following discussion in chambers, the parties then entered into a stipulation, which defendant now claims on appeal he entered into by force. The stipulation was that Bonds was on parole, signed a parole agreement which contained certain conditions and that Bonds

knew if he was found in violation of the parole, his parole could be revoked. Bonds also testified on cross-examination that he knew he was on parole and that he knew a violation of parole could result in imprisonment.

Following testimony by a police lab technician and stipulations by a firearms identification expert and the forensic pathologist, the jury instruction conference was held. The trial court denied defendant's motion for a directed finding. In his defense, defendant presented the stipulation testimony of the assistant State's Attorney who presented the case to the grand jury. He also called two police detectives who testified about their respective investigations of the shooting and search for Martell and defendant.

After a finding of guilty by the jury, the court conducted the sentencing hearing at which the defendant presented testimony in mitigation and the State presented a presentence investigation report on defendant. The report revealed that defendant was on probation at the time of the murder, that he showed no sign of remorse, that he was unemployed and on welfare and that he supported his cocaine addiction through "hustling." The State recommended a sentence of 35 years. The court first commented that defendant had a positive background; however, noting several other factors in mitigation and those included in the presentence investigation report, it stated that the crime involved a cold-blooded murder and sentenced defendant to 27 years in prison.

■ Defendant first asserts that his sixth amendment right to cross-examine witnesses was violated when the trial court allowed Bonds to invoke his fifth amendment right against self-incrimination. The United States and Illinois Constitutions provide that an accused has the right to confront witnesses against him. (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8.) They also mandate that a person has the right to remain silent and that he cannot be compelled to be a witness against himself. (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10.) The privilege against self-incrimination, "which is available [for a witness] in any proceeding, guards against the compulsory disclosure of facts tending to establish criminal liability." (*People ex rel. Keith v. Keith* (1967), 38 Ill. 2d 405, 410, 231 N.E.2d 387.) Once a witness asserts his fifth amendment privilege not to incriminate himself, then "it is for the circuit court to determine if under the particular facts there is a real danger of incrimination." (*People v. Baker* (1988), 123 Ill. 2d 233, 244, 526 N.E.2d 157.) However, the witness is not required to prove that the answer to a particular question would necessarily subject him to prosecution. *People v. Redd* (1990), 135 Ill. 2d 252, 304, 553 N.E.2d 316.

In the present case, the defendant specifically contends that his constitutional right to cross-examine and confront witnesses against him was violated in the trial because the court did not require Bonds to admit his guilt, if any, for violating parole. We have reviewed the record, however, and find that it shows that defense counsel initially raised the issues of Bonds' possible probation violation and a possible infringement upon his fifth amendment right against self-incrimination. It was then that the trial court appointed counsel for Bonds. After speaking with the witness, appointed counsel informed the court that Bonds indeed intended to invoke his constitutional right. In compliance with the *Baker* mandate, the trial court then held several deliberations, including in-chambers discussions about the scope of defense counsel's intended questions involving Bonds' parole or violation thereof, "to determine if under the facts there was a real danger of incrimination."

The court, having ostensibly determined there to be a danger of incrimination, did not require Bonds to testify that he had indeed violated parole. We find no error in its finding. Further, the record does not reveal that defense counsel presented actual evidence or proffered proof of Bonds' purported violations. Neither did he call the parole officer to testify or show that a parole violation proceeding would commence.

Accordingly, we find that the trial court properly allowed Bonds to invoke his constitutional right against self-incrimination and in doing so it did not invalidly infringe upon defendant's constitutional right to confront witnesses against him. To the contrary, a review of the record below and Bonds' trial testimony reveals that defense counsel did in fact question him about the parole and was given great latitude to impeach and test his credibility as a witness. Bonds' bias was not hidden from the jury and through the stipulation it was made aware of his parolee status. The stipulation voluntarily entered into by the parties, at that time without objection by defendant, revealed Bonds' status as a parolee, the conditions thereof, and the repercussions to follow in the event of violation of probation. Additionally, the jury was fully informed of Bonds' previous convictions and sentences.

■ Defendant next asserts that the State improperly commented in closing argument that defendant did not call Martell during trial as a witness. The record shows that the prosecutor stated to the jury "You can ask yourselves why they didn't call Martell Quinn." Ordinarily, the People may not comment on a defendant's failure to call witnesses. (*People v. Holman* (1984), 103 Ill. 2d 133, 151, 469 N.E.2d 119.) However, such comments are permitted under certain

circumstances, as where they are made in response to defense counsel's own references. Here the record demonstrates that defense counsel mentioned in opening argument that the jury would hear from Martell. It is well settled that a prosecutor's remarks in closing argument do not amount to reversible error unless they constitute a material factor in defendant's conviction or result in substantial prejudice to him. *People v. Thompkins* (1988), 121 Ill. 2d 401, 445, 521 N.E.2d 38.

In the present case, the record alone supports defendant's conviction, without the testimony of Martell. There was evidence connecting defendant to Parker's death and testimony by an occurrence witness establishing defendant's presence at the scene of the crime and his participation in the crime, that he chased Parker and Bonds and that he shot at them.

Moreover, the record shows that defense counsel objected to the complained-of statement when it was made and that the court sustained the objections and made it clear to the jury that defendant had no burden to put on a defense or to call anyone to the stand. The court also instructed the jury to disregard improper remarks in opening and closing and that it should disregard comments of counsel which were not based on the evidence.

Accordingly, we find that the prosecutor's comment constitutes no more than harmless error. Because of the prompt action taken by the trial court, coupled with its general admonishments regarding opening and closing arguments, any potential error was cured. Thus, the conviction will not be reversed.

■ Lastly, defendant contends that his sentence should be reversed because the trial court considered improper factors in imposing sentence; to wit, that he was receiving public aid and that he was unemployed. In reiterating the information contained in the presentence investigation report, the State remarked that defendant "supports himself through General Assistance, not a productive member of society," and that defendant did "$100 worth of cocaine a day, Judge, by getting this money by hustling, by preying off society."

The State counters that the defendant has waived this issue on appeal because he did not object to these facts when the State presented them during the sentencing hearing, nor did he object to their inclusion in the presentence report. Neither did the defendant object when the trial court reiterated the factors in issuing its sentence and, finally, he failed to file a motion for reconsideration. Thus, based on defendant's failure to properly object in the court below, we find that he has waived review of this issue on appeal. See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

In any event the record as a whole reflects that the trial court considered all the relevant factors presented. Notwithstanding the fact that a trial court may have relied upon an improper factor such as a defendant's unemployment (see *People v. Bennett* (1991), 222 Ill. App. 3d 188, 204, 582 N.E.2d 370; but see *People v. Avila* (1989), 180 Ill. App. 3d 345, 354, 535 N.E.2d 1027; *People v. Birge* (1985), 137 Ill. App. 3d 781, 792, 485 N.E.2d 37), where, as here, the record demonstrates that the weight placed on the purported improper aggravating factor was so insignificant that it did not lead to a greater sentence (see *People v. Bourke* (1983), 96 Ill. 2d 327, 332, 449 N.E.2d 1338), the sentence will not be disturbed. Moreover, we have held that in setting forth the reasons for the sentence imposed a trial court need not recite and assign a value to each factor presented at the sentencing hearing (*People v. Crews* (1989), 191 Ill. App. 3d 228, 236, 547 N.E.2d 580); rather, it may consider all matters reflecting upon a defendant's personality, propensities, tendencies, general moral character, mentality, and social environment. *People v. Barrow* (1989), 133 Ill. 2d 226, 549 N.E.2d 240.

Accordingly, we affirm defendant's conviction for murder and sentence for 27 years' imprisonment.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.