THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GLORIA CARTER, Defendant-Appellant.

(No. 70-69;

Second District—February 25, 1971.

William N. Stone, of Sterling, for appellant.

John Roe, State's Attorney, of Oregon, for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

On the 15th day of October, 1969, Hon. Morey C. Pires, Magistrate of the Circuit Court in Lee County, Illinois, entered an order depriving Gloria Carter, the natural mother of Gary Carter, of the custody of her six children and awarding custody of the children to the grandparents, Gladys and Harold Garrison, and an uncle. Subsequently, the Hon. James E. Bales, Circuit Judge of Lee County, entered an order transferring the cause to Ogle County.

The finding of the Circuit Court of Lee County was appealed to the Appellate Court, Second District, and on September 25, 1970, the Appellate Court, Justice Abrahamson writing the opinion, reversed the finding of the Magistrate, and held that Gloria Carter, the mother, was a fit person to have the custody of the children, and "that the family home was large, clean and well maintained, children were happy and the mother loving and solicitous of her children." The Court further found that the mother did not forfeit her right of custody even though an unmarried man lived in the family home and paid the rent, utilities and a portion of the food. (*Wallingford v. People*, 129 Ill.App.2d 227, 262 N.E.2d 607).

While the appeal was pending, on the 1st of February, 1970, Gloria Carter, with her daughter Paula Wallingford Crawford, went to the First Baptist Church in Rochelle, Illinois, where Gary Carter, son of Gloria Carter, was in the nursery. Paula went into the church, took Gary out to the waiting car, and Mrs. Carter took the child home with them. The custody of Gary at that time was, as stated, in the grandparents, Gladys and Harold Garrison.

It is to be noted that the birthday of Gary was the following Saturday when he would be one year of age.

On February 2, 1970, a petition for rule to show cause was filed, and a bench warrant issued on February 3rd. A hearing was had before the Hon. William B. Phillips, Judge of the Circuit Court of Ogle County. The matter was continued to February 4th and on that date the defendant, Gloria Carter, was sentenced to 6 months in the Ogle County jail for contempt of Court, and her daughter, Paula, fined $25.00 and costs.

When the bench warrant was served upon Gloria Carter at her home she met the Deputy Sheriff with a shot gun in her hands but admitted him to the premises, and at no time pointed the shot gun at him. The Deputy Sheriff took the gun from her but with no resistance on her part.

On appeal to this Court the defendant contends that the interference with the Court order here is not sufficient to merit the excessive punishment imposed.

■■ To say that contempt of Court is in a state of flux at the present time is probably an understatement. Contempt of Court consists of any act calculated to obstruct, embarrass or hinder the Court in the administration of justice which is committed for the purpose of lessening the authority or the dignity of the Court. The four types of contempt are civil, criminal, direct and indirect. An indirect contempt is a contumacious act committed outside the presence of the Court. A direct contempt is an act committed in the presence of the Court. A civil contempt ordinarily consists in failing to comply with the order of the Court. A criminal contempt is the contemptuous conduct directed against the dignity and authority of the Court and the Judge.

In *People v. Gohlson*, 412 Ill. 294, 108 N.E.2d 333, (1952) on page 336 the Court stated:

"The lines of demarcation between direct and indirect contempt, and between criminal and civil contempt can be, and are, in many instances, very indistinct and even imperceptible, for the simple reason that many acts involve the elements of both, and, as a consequence, confusion has resulted in the court's attempts to classify them. Direct contempts may be dealt with summarily, but the procedure in indirect contempt is governed by the principles of due process of law. Penalties for criminal contempt are purely punitive, while penalties for civil contempt are remedial, coercive and punitive. *People v. Redlich*, 402 Ill. 270, 83 N.E.2d 736."

The Court further stated in discussing the contempt powers of the Court that jurisdiction to punish for criminal contempt may be vested in a jury, in another court, or even in another county by change of venue.

In 1968 the Supreme Court of the United States in *Bloom v. State of Illinois* 391 U.S. 194, 88 S.Ct. 1477, in reversing the Supreme Court of Illinois (*People v. Bloom* 35 Ill.2d 255, 220 N.E.2d 475) held that a de-

fendant is entitled to a jury trial under the 5th and 14th Amendments where the punishment for contempt is such as to indicate that it is a serious offense. In the Illinois contempt proceedings the defendant was sentenced to two years confinement.

The Supreme Court of Illinois *in re Estate of Melody* (1969), 42 Ill.2d 451, 258, N.E.2d 104 applied the doctrine of the *Bloom* case to a criminal contempt resulting in a one year sentence and held that the defendant was entitled to a jury trial.

The Supreme Court specifically states in *Bloom* that the doctrine enunciated there does not apply to petty offenses.

■■ In the instant case the punishment that was imposed was a six months sentence. We feel that while defendant, under *Bloom* above, is not therefore entitled to a jury trial, circumstances of the instant case require the reversal.

■■ The Court will ordinarily not disturb a sentence imposed by a trial court, but in the instant case a sentence of six months against the mother who improperly regained custody of her own child is peculiarly severe. The love of a child by the mother is certainly an admirable trait and while she erred in her actions, this Court will take judicial cognizance of the love of a mother for her baby. Particularly, is this true, in view of the fact that this Court has held, *supra*, that the orders of the Lee and Ogle County courts in taking the custody of the children from the defendant were improper.

■■ In the case of Paula Wallingford, the 16 year old daughter, she denied that she realized that she was violating an order of the court.

The judgment of the Circuit Court of Ogle County finding the defendant, Gloria Carter and Paula Wallingford Crawford guilty of indirect criminal contempt is hereby reversed.

Judgment reversed.

SEIDENFELD and T. MORAN, JJ., concur.