THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL PATRICK, Defendant-Appellant.

Fourth District   No. 15641

Opinion filed May 7, 1980.

TRAPP, J., specially concurring.

Marc M. Barnett, Charles K. Piet, and Alan Steven Nagel, all of Barnett, Ettinger, Glass, Berkson and Braverman, Ltd., of Chicago, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Gary J. Anderson and Karen L. Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant, Michael Patrick, pleaded guilty in the circuit court of McLean County to a charge of unlawful delivery of a controlled substance and on October 22, 1976, he was placed on 4 years' probation. On May 24, 1979, a petition to revoke that probation was filed in that court alleging that he had violated the condition of probation that he report monthly to the probation officer assigned to him. Following a hearing on July 30, 1979, the court (1) found that he had committed the alleged violation, (2) extended his probation for an additional 13 months, (3) found him in contempt of court for the violations, and (4) sentenced him to 30 days' imprisonment for that contempt.

On appeal defendant asserts that the court erred (1) in finding him in contempt without affording him the procedural safeguards to which he was entitled, and (2) in imposing a sanction more severe than his failure to report would warrant.

At the hearing on the motion to revoke, the parties stipulated that defendant had failed to report in 13 of the months since he was placed on probation. He testified that he had been informed by the probation officer that he need report only by telephone. He explained that he had

been employed during all but two months of the period and that when he had tried to phone the probation office he had either found the line to be busy or the probation officer to whom he was assigned absent. He stated that he found the phone line to the probation office to be constantly busy during normal business hours.

Patrine Marciniak testified that she had been defendant's probation officer since December 1978, and that her first contact with defendant was in February 1979 when defendant reached her by telephone. She stated that at that time she told defendant that the policy of her office had changed and that in future months he would be required to report in person rather than by telephone. Defendant failed to report in March or April so on May 4, 1979, she sent defendant a letter requiring him to report in person, which he had continued to do commencing on May 8, 1979.

We examine first the question of whether sentencing for contempt of court is a proper sanction for a violation of probation. We previously discussed this question in *People v. Colclasure* (1977), 48 Ill. App. 3d 988, 363 N.E.2d 631, where, in a split decision, we held that contempt was a proper sanction for a violation of the terms of periodic imprisonment. We pointed out that prior to the effective date of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1963, ch. 38, pars. 101—1 to 126—1) on January 1, 1964, contempt of court was the only sanction permissible for a violation of those terms of probation which were a matter of discretion with the court. (See also *People v. Franciere* (1964), 47 Ill. App. 2d 436, 198 N.E.2d 170.) We noted that provision was not expressly retained in either the Code of Criminal Procedure or in the Unified Code of Corrections. Section 5—6—4(h) of the original Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—6—4(h)) provided that upon revocation of probation or conditional discharge, the defendant would receive credit for time served on probation or conditional discharge. The comments of the Code's drafting group (Ill. Ann. Stat., ch. 38, par. 1005—6—4, Council Commentary (Smith-Hurd 1973)) recognized that the credit provision would make it difficult to impose an effective sanction on a probationer by revoking probation if he had served a time approaching the maximum sentence for the offense of which he had been convicted. The Council Commentary noted, however, that "the court retains the sanctions of criminal contempt and fining the offender for violating the conditions of probation."

The *Colclasure* majority concluded that (1) the court's inherent power to punish for contempt (*People v. Javaras* (1972), 51 Ill. 2d 296, 281 N.E.2d 670; *Green v. United States* (1958), 356 U.S. 165, 2 L. Ed. 2d 672, 78 S. Ct. 632) included the power to punish for the willful violation of an order fixing the terms of periodic imprisonment, and (2) the availability

of other statutorily designated sanctions did not negate the court's inherent contempt power. (See *People ex rel. Rusch v. White* (1929), 334 Ill. 465, 166 N.E. 100.) Because of the court's inherent contempt power and because the comments of the group drafting the Unified Code of Corrections indicate that the format of the Code was adopted with a recognition of the existence of that inherent power as one added sanction, we deem the court to have possessed power to punish for contempt in this case.

■ Defendant's theory that he was entitled to various procedural safeguards is based upon his contention that any contempt upon his part was indirect contempt rather than direct contempt. Direct contempt arises from acts committed in the presence of the court or any constituent part of the court. (*People v. Skar* (1964), 30 Ill. 2d 491, 198 N.E.2d 101; *People v. Hagopian* (1951), 408 Ill. 618, 97 N.E.2d 782; *People v. Carter* (1971), 132 Ill. App. 2d 29, 267 N.E.2d 362.) Indirect contempt arises from acts done outside the presence of the court. (*Hagopian; Carter; Javaras.*) For the violation of a court order to constitute contempt, the violation must be willful. (*People v. Wilcox* (1955), 5 Ill. 2d 222, 125 N.E.2d 453.) The question of whether defendant's failure to report here was willful clearly involved circumstances existing outside the presence of any constituent part of the court. Any contempt here was indirect.

In *Javaras* the Illinois Supreme Court held that in punishing for indirect contempt the alleged contemner must be (1) informed of the charges against him by information, notice, citation, or rule to show cause, (2) given an opportunity to file an answer to the charges, (3) given a full hearing thereon, and (4) allowed a jury trial in cases involving serious contempts. The only exception to this rule is that indirect contempt may be punished summarily as a direct contempt if admitted by the contemner in open court. (*People v. Berof* (1937), 367 Ill. 454, 11 N.E.2d 936.) The State asserts that by stipulating as to the times he failed to report, defendant admitted his contempt in open court. However, our reading of the stipulation convinces us that defendant did not agree that his failure to report had been willful or contumacious. Thus the procedural safeguards mentioned in *Javaras* were required.

■ Here, defendant was informed by a verified petition that he was charged with violating the condition of his probation requiring that he report. He was given an opportunity to file a responsive pleading, and, in part, did so. He was offered a full hearing where he confronted and cross-examined the witness against him and put on evidence on his behalf. The 30-day incarceration imposed was not severe enough to have required an opportunity for jury to be a condition precedent to its imposition. (*Bloom v. Illinois* (1968), 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1477; *County of*

*McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353, 282 N.E.2d 720.) The petition did not directly inform defendant that he might be held in contempt of court but it did directly inform him that his probation might be terminated in which event he could have been imprisoned for a felony term. The contempt determination was a lesser sanction available to the court. It involved no issue not involved in a determination by the court as to whether to revoke the probation. Defendant was in no way prejudiced by being taken by surprise in the court's action. We deem the procedure followed to have been sufficient to support the finding of contempt.

■ When the contempt sanction is used, the severity of the punishment imposed must be measured by and limited to the damage caused to the court by the breach of its authority and not the nature of the original offense. Maintaining the discipline of probationary rules is of substantial importance to the functioning of courts. Even though defendant may have been lulled into a feeling that he could disregard his reporting obligations because he was not sooner sanctioned, we do not deem the punishment imposed to be excessive.

We affirm.

Affirmed.

WEBBER, J., concurs.

Mr. JUSTICE TRAPP, specially concurring:

Section 5—6—4 of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—6—4) is a comprehensive scheme for the disposition of alleged violations of probation and one can find no persuasive reason for the invocation of the inherent power of the court in contempt to dispose of such matters.

The use of contempt power in the matter of violation of certain discretionary conditions of probation originated in the legislature in 1939. Section 4 of "An Act providing for a system of probation ° ° °," as amended by an act approved July 13, 1939 (Ill. Rev. Stat. 1939, ch. 38, par. 787(4)) provides in part:

"(4) That the defendant shall do or refrain from doing such further acts touching upon his personal habits and conduct, including the use of intoxicating liquors, the operation of motor vehicles, visiting houses of ill fame, associating with prostitutes or criminals, as the Court may deem necessary for the proper conduct and reform of such defendant, provided, however, the violation by the defendant of *that part of the order based on this paragraph, shall not be ground for revoking the order* admitting the

defendant, but shall be deemed in contempt of the Court and defendant may be proceeded against as in other cases of contempt." (Emphasis added.)

This legislative authority was repealed effective January 1, 1964. *People v. Franciere* (1964), 47 Ill. App. 2d 436, 198 N.E.2d 170.

The provision appears to have been a legislative step to limit or restrain the court's authority to revoke probation and impose a penitentiary sentence for a violation of those particular types of condition of probation.

Neither sections 117—1 and 117—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, pars. 117—1, 117—3), nor its predecessors, authorized a term of imprisonment as a condition of probation. Essentially, the court could only continue probation or impose sentence for the underlying offense.

Section 5—6—4(e) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—6—4(e)) provides:

"If the court finds that the offender has violated a condition at any time prior to the expiration or termination of the period, it may continue him on the existing sentence, with or without modifying or enlarging the conditions, or may impose any other sentence that was available under Section 5—5—3 at the time of the initial sentencing."

Section 5—6—3(d) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—6—3(d)) now permits imprisonment not to exceed three months as a condition of probation.

The last cited sections disclose a procedural scheme whereby upon a finding of violation the court may revoke the existing probation and in the exercise of discretion enlarge or impose new conditions of probation, including imprisonment. The limits of imprisonment are provided by the statute rather than by the choice of the judge.

The authorities cited in support of the use of the inherent power of contempt are not persuasive. In *Green v. United States* (1958), 356 U.S. 165, 2 L. Ed. 2d 672, 78 S. Ct. 632, there was then no statutory offense for bail jumping, so that the court had no alternative but the use of contempt. In *People v. Javaras* (1972), 51 Ill. 2d 296, 281 N.E.2d 670, the court reversed a conviction for direct criminal contempt but refrained from determining whether the act alleged was contemptuous or should be prosecuted criminally. In *People ex rel. Rusch v. White* (1929), 334 Ill. 465, 166 N.E. 100, a statute provided that the county court should supervise election judges and clerks and expressly made the appointees subject to contempt of court for official misconduct.

The legislature has used the concept of contempt wittingly and discriminatingly in the development of the several criminal codes. In

section 5—9—3(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—9—3(b)), it is provided that a wilful failure to pay a fine shall be treated as contempt with a right to release upon payment—in effect a civil contempt.

Sections 112—6 and 106—3 of the Code of Criminal Procedure of 1963, respectively, provide punishment as in contempt for persons who violate the secrecy of grand jury proceedings and who having been granted immunity refuse to testify. Section 7 of division XIII of the Criminal Code of 1874 provides that persons who have been duly subpoenaed but shall neglect or refuse to attend upon the court shall be proceeded against and punished for contempt of the court. Ill. Rev. Stat. 1977, ch. 38, pars. 112—6, 106—3 and 155—2.

The authority for concluding that the legislature drafted the Unified Code of Corrections in reliance upon sanctions arising under the inherent powers of the court to employ contempt is scant and unpersuasive. Since there may have been some misapprehension arising in the transition from the prior law to the present Codes, I would hold that subsequent to the date of this opinion an alleged violation of a condition of probation must be prosecuted as provided by the Unified Code of Corrections and not by means of contempt of court.