(No. 62512

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOHN E. WALDRON *et al.* (Michael M. Melius, Appellant).

*Opinion filed October 1, 1986.—Rehearing denied December 1, 1986.*

297

MORAN, J., took no part.

Mary Robinson, of Robinson & Skelnik, of Elgin, for appellant Michael M. Melius.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Mark L. Rotert and Jack Donatelli, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

The appellate court found respondent, Michael M. Melius, the public defender of Lake County, guilty of indirect criminal contempt for failing to file briefs in two

criminal appeals. We allowed his petition for leave to appeal (103 Ill. 2d R. 315(a)).

In November 1982, respondent was appointed by the appellate court to represent defendants, Richard Mangioni and John E. Waldron, in their respective appeals. Briefs for both appellants were due in February 1983. On May 3, 1983, respondent moved unsuccessfully for leave to withdraw as appellate counsel for Mangioni and 16 other defendants, not including Waldron, for the reason that his office had insufficient staff and expertise to efficiently and effectively handle so many appeals. This motion was denied on July 21, 1983. Respondent subsequently moved for and was allowed five 60-day extensions of time within which to file briefs in each of the cases. All further motions for extensions were denied. Pursuant to order of the appellate court, respondent filed a notice establishing October 1, 1984, as the date by which briefs in each case would be filed, but respondent failed to file the briefs as noticed.

On July 24, 1985, the appellate court entered the following order:

> "It is the order of this Court that Attorney Michael M. Melius appear before this Court on Wednesday, August 7, 1985, at the hour of 8:30 A.M. to show cause why he has failed to proceed in accordance with the Rules of the Supreme Court of Illinois and the orders of this Court in general numbers 82—889 (People, etc. v. John E. Waldron) and 82—891 (People, etc. v. Richard Mangioni)."

The order did not state when or in what manner respondent was alleged to have violated the rules of court or the court's orders.

On August 7, 1985, in compliance with the order, respondent appeared before a panel of the appellate court. Respondent responded to questions posed by the presiding judge concerning his lack of diligence in the Man-

gioni and Waldron cases. He stated that the briefs in those two appeals were the last of 38 to which his office had been appointed. He said that at the time of his appointment to prosecute these two appeals his office was "totally understaffed" to prepare its own cases, much less the appointed appellate work. He explained that an attempt to use law students to research and assist in the preparation of the briefs was unsuccessful. He stated further that the delay resulted from his inability to contact the two appellants, despite numerous attempts to communicate with them. In conclusion, respondent explained that he would prepare and file the briefs in each of the cases by the end of August 1985. The court informed respondent that the court had not decided "what we will do here"; that it might accept his representation as to when a brief would be filed; cite him for contempt; impose a fine; debar respondent from appearing before the court; and refer the matter to the Attorney Registration and Disciplinary Commission.

Later on that same day, the court entered a written order in which it found that respondent's failure either to file briefs in a timely manner or to request an extension constituted a wilful contempt of court and that respondent "is found to be in contempt of this court and is ordered adjudged and decreed to be guilty of indirect criminal contempt." Respondent retained counsel and filed a post-trial motion "in arrest of judgment or for new hearing and/or petition for rehearing," alleging that the order of July 24, 1985, did not comport with due process because it failed to provide notice that the appearance was for a proceeding to determine whether he was in contempt of court, and therefore he was not prepared to defend himself. He challenged the sufficiency of the notice to meet the requirements of due process applicable in indirect criminal contempt proceedings and alleged that because of the defects and omissions of the

notice he had come to the hearing without the assistance of counsel and unprepared to present all of the evidence that was relevant to the issues. Respondent's motion was summarily denied.

In addition to the contention that the finding of contempt cannot stand because the order to show cause did not give him adequate notice of the specific charges against him, respondent contends that the proceedings conducted by the appellate court did not constitute a hearing at which he was permitted to be represented by counsel, to cross-examine witnesses, and to present evidence in his own behalf. (*Johnson v. Mississippi* (1971), 403 U.S. 212, 215, 29 L. Ed. 2d 423, 426, 91 S. Ct. 1778, 1780; *In re Oliver* (1948), 333 U.S. 257, 92 L. Ed. 682, 68 S. Ct. 499; *People v. Jashunsky* (1972), 51 Ill. 2d 220.) Respondent asserts that the recorded transcript of the proceedings indicates that the three judges serving on the panel were uncertain as to the nature of the proceeding taking place and that one judge referred to the procedure as a "meeting." Respondent argues that the uncertainty, when considered with the obvious impatience of one of the judges in his questioning, shows that the proceedings did not comport with the due process requirements of the fourteenth amendment of the United States Constitution and article I, section 2, of the Illinois Constitution of 1970.

The People respond that the rule to show cause served on respondent was sufficient to inform him of the charges against him, and that he was given the opportunity to file an answer and receive a full hearing. This, they contend, meets the requirements of due process. (*Cooke v. United States* (1925), 267 U.S. 517, 537, 69 L. Ed. 767, 774, 45 S. Ct. 390, 395; *Johnson v. Mississippi* (1971), 403 U.S. 212, 215-16, 29 L. Ed. 2d 423, 426-27, 91 S. Ct. 1778, 1780; *People v. Javaras* (1972), 51 Ill. 2d 296.) The People argue that since pleadings in indirect

criminal contempt actions need not have all the formalities of a criminal complaint (*People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407), the order to show cause was sufficient notice reasonably calculated to apprise respondent of the pendency of the action and afford him the opportunity to present objections (*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657). Furthermore, the People contend that respondent's repeated affirmative responses to questions show that respondent fully understood the nature of the rule to show cause and was aware that he could be held in contempt. Citing *United States v. United Mine Workers* (1947), 330 U.S. 258, 91 L. Ed. 884, 67 S. Ct. 677, and *United States v. Joyce* (7th Cir. 1974), 498 F. 2d 592, the People argue that the omission of the words "criminal contempt" from the order to show cause did not automatically render the notice violative of due process. The People argue, too, that because of his failure to question the sufficiency of the notice during the proceedings, respondent has waived any objection he might have concerning the propriety of the proceedings. (*National Metalcrafters v. Local 449, UAW* (1984), 125 Ill. App. 3d 399.) Finally, the People cite, as being consistent with the action of the appellate court, the decisions of other jurisdictions in which reviewing courts have upheld contempt citations against attorneys who had failed to file briefs. *Allison v. State* (Miss. 1983), 436 So. 2d 792; *Marroquin v. State* (Tex. 1982), 652 S.W.2d 429; *In re Van Orden* (Tex. 1977), 559 S.W.2d 805; *State ex rel. Gremillion v. Ciolino* (La. 1970), 242 So. 2d 882.

We do not agree that respondent has waived the issue regarding the sufficiency of the notice given by the rule to show cause. Contrary to the People's assertions, respondent raised in his post-proceeding motion the precise issues he presents here. We need not repeat the descrip-

tion of the motion previously set forth in this opinion, but in addition to the issues enumerated, the motion alleged that the notice failed to provide "actual or constructive notice of the specific charges" against him, the lack of knowledge of which precluded him from adequately preparing for a hearing. *National Metalcrafters v. Local 449, UAW* (1984), 125 Ill. App. 3d 399, 406.

Contempt of court has generally been defined as conduct "which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute." *(People v. Javaras* (1972), 51 Ill. 2d 296, 299.) An indirect contempt occurs out of the presence of the court, its proof being dependent upon evidence of some kind or upon facts of which the court has no judicial notice. *(People v. Jashunsky* (1972), 51 Ill. 2d 220, 223-24.) Whether a contempt is considered direct or indirect, if the court is required to determine whether the conduct alleged was wilful, and in order to do so must consider extrinsic evidence as to matters not within its knowledge, the respondent must be given an opportunity to defend. *(People ex rel. Melendez v. Melendez* (1971), 47 Ill. 2d 383, 386.) Here, the record indicates that respondent, a public defender, was appointed to 36 appeals, and in view of the reasons advanced for his failure to timely file briefs in these two cases, it was necessary to determine from extrinsic evidence whether the failure to do so was wilful.

We do not condone respondent's conduct. If there was a valid reason for his failure to file the briefs by October 1, 1984, as noticed, the rules of this court required that he file appropriate motions for extensions of time. Although his conduct did not meet the standards of our profession, unless he was afforded due process, the order finding him in contempt cannot stand.

In proceedings to punish indirect criminal contempts,

due process requires that the accused be accorded notice and a fair hearing. (*Johnson v. Mississippi* (1971), 403 U.S. 212, 215, 29 L. Ed. 2d 423, 426, 91 S. Ct. 1778, 1780; *In re Oliver* (1948), 333 U.S. 257, 275-76, 92 L. Ed. 682, 695, 68 S. Ct. 499, 509.) The accused contemnor has "the constitutional right to know the nature of the charge against him, to have it definitely and specifically set forth by citation or rule to show cause, and to be accorded an opportunity to answer and to introduce evidence in his own defense." (*Marcisz v. Marcisz* (1976), 65 Ill. 2d 206, 208-09; *People v. Pomeroy* (1950), 405 Ill. 175, 181.) Upon consideration of this record in the light of the above standards, we conclude that the proceedings in the appellate court did not afford respondent due process.

We agree with respondent's contention that the rule to show cause did not adequately advise respondent that he might be subjected to punishment for contempt. We have considered the authorities cited by the People in support of their argument that the rule to show cause was not defective by reason of the failure to charge criminal contempt (*United States v. United Mine Workers* (1947), 330 U.S. 258, 91 L. Ed. 884, 67 S. Ct. 677; *United States v. Joyce* (7th Cir. 1974), 498 F.2d 592) and find them distinguishable. In those cases, the respondents were advised by the rule that they were required to show cause why they should not be held in contempt. The contention made by the respondents was that the notice and rule were inadequate for the reason that they failed to require the respondents to show cause why they should not be held in criminal contempt. Here, the only requirement which the notice and rule imposed on respondent was that he "show cause why he has failed to proceed in accordance with the Rules of the Supreme Court of Illinois and the orders of this Court." The People have not cited any authority which persuades us that

the rule to show cause, as issued by the appellate court, adequately advised respondent of the charge and the possibility that he might be found in contempt.

The transcript shows that in the proceedings conducted before the appellate court respondent was not advised that he could present evidence. The proceedings were apparently conducted on an informal basis, and the transcript indicates that respondent was not given an opportunity to present any evidence other than his own statement. For all practical purposes, the proceeding consisted solely of accusatory cross-examination of respondent by one of the judges.

We have considered the cases cited by the People in support of their contention that other jurisdictions, on review, have affirmed findings of contempt under similar circumstances. We have examined those authorities and find that in each instance the respondent was specifically advised in the rule to show cause why he should not be held in contempt.

For the reasons stated, the order finding respondent guilty of criminal contempt is vacated, and the cause is remanded to the appellate court for further proceedings consistent with this opinion.

*Order vacated;*
*cause remanded.*

JUSTICE MORAN took no part in the consideration or decision of this case.