Docket No. 91381–Agenda 14–January 2002.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JERRY L. LINDSEY, Appellant.

JUSTICE FITZGERALD delivered the opinion of the court:

Defendant, Jerry L. Lindsey, pleaded guilty to the charge of aggravated criminal sexual abuse (720 ILCS 5/12–16(d) (West 1996)) and was placed on sex offender specific intensive probation for a period of four years, and further sentenced to 364 days of work release. Under the terms of his work release, defendant was confined to the Vermilion County Public Safety Building and only released from confinement to perform 200 hours of public service work and attend counseling. Under the terms of his sex offender specific intensive probation, defendant attended counseling at the Prairie Center Health Systems (Prairie Center). He began his treatment in the daytime intensive outpatient group, scheduled to meet between 9 a.m. and noon, Monday through Friday, for a period of five weeks. On December 30, 1999, defendant successfully completed his intensive treatment and was ordered to attend follow-up outpatient treatment. Defendant’s outpatient sessions were scheduled to meet each Monday from 10 a.m. until 11:30 a.m., beginning Monday, January 3, 2000.

On January 7, 2000, the State filed a petition to revoke defendant’s probation. The petition stated that defendant violated probation by signing out of the county jail 1½ hours before his scheduled counseling session on January 3, 2000, and by signing out of the county jail on January 4, 2000, when counseling was not scheduled. At the hearing to revoke defendant’s probation, the State called four witnesses: two Prairie Center counselors, defendant’s probation officer, and defendant. LeAnn Chexem, an adult addiction counselor at the Prairie Center, testified that defendant completed the intensive program and was enrolled in the follow-up program, beginning January 3, 2000. A second counselor testified that she did not observe defendant at the Prairie Center until 10 a.m. on January 3, 2000. Defendant’s probation officer testified and described the terms of defendant’s probation and work release, including the conditions and terms for signing out of the Vermilion County Public Safety Building. When called as an adverse witness, defendant testified about his conduct on January 3 and 4, 2000.

Following the revocation hearing, on February 8, 2000, defendant’s probation was revoked, and defendant was resentenced to another four years’ intensive probation and 364 days of work release to be served at the Vermilion County Public Safety Building. The trial court denied defendant’s motion to reconsider the sentence. The appellate court affirmed the judgment of the trial court (319 Ill. App. 3d 586), and we granted defendant’s petition for leave to appeal (see 177 Ill. 2d R. 315).

On appeal to this court, defendant argues that: (1) the State violated his right against self-incrimination, pursuant to article I, section 10, of the Illinois Constitution (Ill. Const. 1970, art. I, §10), by calling him as an adverse witness to testify against himself; (2) the State violated his right to a fundamentally fair probation hearing under the due process clauses of the state and federal constitutions (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §2) by calling him as an adverse witness because it denied his right to confront and cross-examine, denied his right to counsel, and relieved the State of its burden of proof; and (3) the trial court erred by failing to grant him day-for-day credit for presentence custody. For the following reasons, we affirm the judgment of the appellate court, affirming the decision of the trial court.

ANALYSIS

I. The Privilege Against Self-Incrimination

Under article I, section 10, of our state constitution, “No person shall be compelled in a criminal case to give evidence against himself ***.” Ill. Const. 1970, art. I, §10. Defendant first argues that a probation revocation proceeding is “criminal” in nature within the meaning of article I, section 10, and, therefore, the protections against self-incrimination apply to probation revocation hearings. Our review of this issue is 
de novo
. 
People v. Carlson
, 185 Ill. 2d 546, 551 (1999).

The United States Supreme Court has resolved a similar issue in the context of the fifth amendment of the federal constitution, which provides, in relevant part, that no person “shall be compelled in any criminal case to be a witness against himself.” U.S. Const., amend. V. The Court clearly stated that “[p]robation revocation *** is not a stage of a criminal prosecution, but does result in a loss of liberty.” 
Gagnon v. Scarpelli
, 411 U.S. 778, 782, 36 L. Ed. 2d 656, 661-62, 93 S. Ct. 1756, 1759-60 (1973). Relying on 
Gagnon
, in 
Minnesota v. Murphy
, 465 U.S. 420, 79 L. Ed. 2d 409, 104 S. Ct. 1136 (1984), the Court decided the issue of whether the fifth amendment privilege is self-executing when a probationer is questioned by a probation officer about a crime other than the crime for which he was convicted. In 
Murphy
, the defendant admitted to his probation officer that he had committed a rape and murder, and this admission was used against the defendant in the subsequent criminal prosecution. The Court found that the privilege is not self-executing and that the defendant’s duty to appear and to answer questions propounded by his probation officer was no different from the duty of an “ordinary witness at a trial or before a grand jury who is subpoenaed, sworn to tell the truth, and obligated to answer on the pain of contempt, unless he invokes the privilege and shows that he faces a realistic threat of self-incrimination.” 
Murphy
, 465 U.S. at 427, 79 L. Ed. 2d at 419, 104 S. Ct. at 1142. The Court stated:

“A State may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege.” 
Murphy
, 465 U.S. at 435, 79 L. Ed. 2d at 424, 104 S. Ct. at 1146.

Further, the Court noted that the privilege is not available where the questions put to the probationer posed only the threat that his probation would be terminated:

“Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. [Citations.] Just as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer. It follows that whether or not the answer to a question about a residential requirement is compelled by the threat of revocation, there can be no valid claim of the privilege on the ground that the information sought can be used in revocation proceedings.

Our cases indicate, moreover, that a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding ***.” 
Murphy
, 465 U.S. at 435 n.7, 79 L. Ed. 2d at 425 n.7, 104 S. Ct. at 1146 n.7.

This court has followed the reasoning in 
Murphy
 to hold that a defendant cannot claim the privilege against self-incrimination merely because his answer to a question might result in a revocation of his probationary status. For example, in 
People v. Allen
, 107 Ill. 2d 91, 104 (1985), 
aff’d
, 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (1986), we held that in a sexually dangerous person proceeding, the defendant was not entitled to refuse to answer a psychiatrist’s questions which might incriminate him. In 
People v. Allegri
, 109 Ill. 2d 309, 313-14 (1985), we noted that a probation revocation hearing is not a proceeding at which guilt or innocence is to be determined; rather, it takes place “only after the defendant has already been convicted, sentenced to probation, and then has violated the conditions of the probation.”

Furthermore, our appellate court has relied on 
Murphy
 and 
Gagnon
 to hold that probation revocation proceedings are civil, not criminal, in nature. See 
People v. Williams
, 303 Ill. App. 3d 264 (1999) (probation revocation proceeding is civil); 
People v. Bell
, 296 Ill. App. 3d 146 (1998) (probation revocation proceeding is noncriminal);
 People v. Neckopulos
, 284 Ill. App. 3d 660 (1996) (probation revocation proceeding is not a criminal proceeding); 
People v. Martin
, 226 Ill. App. 3d 753 (1992) (State was not precluded from calling defendant as a witness in proceeding to revoke his probation); 
People v. Kane
, 136 Ill. App. 3d 1030 (1985) (revocation of probation is not a prosecution);
 People v. Huff
, 44 Ill. App. 3d 273 (1976) (probation revocation proceeding is qualitatively different from a criminal trial); but see 
People v. McNairy
, 309 Ill. App. 3d 220 (1999) (probation revocation proceeding is a criminal proceeding that implicates article I, section 10, of the Illinois Constitution).

In this case, the appellate court, relying on 
Murphy
, as well as 
Bell
, 
Martin
, and 
Neckopoulos
, held that the self-incrimination privilege under article I, section 10, is inapplicable to probation revocation proceedings. 319 Ill. App. 3d at 588-91. In so doing, the appellate court recognized that in 
McNairy
, an appellate panel in another district held that under the Illinois Constitution a probation revocation proceeding is a “criminal case” in which a person may not be compelled to give evidence against himself. 319 Ill. App. 3d at 589-90. However, in this case, the appellate court declined to follow 
McNairy
, concluding that the State may call a defendant as an adverse witness to testify at a probation revocation proceeding. 319 Ill. App. 3d at 590.

On appeal to this court, defendant urges us to follow 
McNairy
 and reject those appellate court opinions holding that probation revocation proceedings are civil proceedings. Defendant argues that our decisions in 
People v. Grayson
, 58 Ill. 2d 260 (1974), and 
People v. Peterson
, 74 Ill. 2d 478 (1978), warrant a finding that the proceedings are criminal. Both 
Grayson
 and 
Peterson
, however, are factually distinguishable from the present situation. In 
Grayson
, the defendant was placed on probation after pleading guilty to armed robbery. Subsequently, he was indicted for another armed robbery and was acquitted of that charge in a bench trial. The State filed a petition to revoke defendant’s probation on the first robbery, alleging as the only grounds the commission of the second robbery. In holding that collateral estoppel applied, we acknowledged that there exists a substantial difference between a probation revocation proceeding and a criminal trial. 
Grayson
, 58 Ill. 2d at 264-65. We noted that proceedings may be civil in form, yet criminal in nature, and concluded that the State could not constitutionally bring defendant before a new court in a probation revocation proceeding and relitigate an issue previously decided in a criminal case in which defendant was acquitted of the underlying charge. 
Grayson
, 58 Ill. 2d at 265. Our holding in 
Grayson
, however, was narrowly tailored to the facts of that case. It involved the specific issue of collateral estoppel and its application in a probation revocation proceeding. Contrary to defendant’s argument, we did not suggest that probation revocation proceedings should be considered criminal in nature.

Likewise, in 
Peterson
, we held that collateral estoppel prohibited the State from challenging a finding that the defendant’s confession was involuntary at a subsequent probation revocation hearing. 
Peterson
, 74 Ill. 2d at 486. The defendant in 
Peterson 
was charged with possession of a hypodermic syringe. While being questioned by police officers, defendant confessed to a burglary of a gas station. At the trial on the underlying criminal charge, the trial court suppressed Peterson’s confession to the burglary. Thereafter, the State filed a petition to revoke defendant’s probation on the underlying charge and sought to introduce testimony of the confession. We held that an involuntary confession cannot be admitted against a defendant in a probation revocation hearing. 
Peterson
, 74 Ill. 2d at 484. Our holding was premised on due process principles, which we found prohibited the use of a coerced confession at a probation revocation proceeding. 
Peterson
, 74 Ill. 2d at 485. Neither 
Peterson
 nor 
Grayson
 persuade us to depart from the well-reasoned decisions of 
Murphy
 and our appellate court. Accordingly, we hold that a probation revocation proceeding is a civil proceeding.

Relying upon 
People v. McCauley
, 163 Ill. 2d 414 (1994), defendant next maintains that the Illinois Constitution gives its citizens a greater degree of protection than the federal constitution and, thus, article I, section 10, applies to probation revocation proceedings even if they are considered civil in nature.

In 
McCauley
, we clearly stated that “in the context of deciding State guarantees, Federal authorities are not precedentially controlling; they merely guide the interpretation of State law.” 
McCauley
, 163 Ill. 2d at 436. We held that, rather than “blindly follow the reasoning of a United States Supreme Court decision at all costs,” this court should rely on its own case law, wisdom and reason to construe our state constitutional provisions. 
McCauley
, 163 Ill. 2d at 439; see also 
Rollins v. Ellwood
, 141 Ill. 2d 244, 275 (1990) (This court may, in construing state due process guarantee, look for “guidance and inspiration” to constructions of federal guarantee by federal courts, but final conclusions on construction of state guarantee are for this court to decide). Under certain circumstances, we may construe our state provisions more broadly than their federal counterparts. Therefore, the question before us is whether article I, section 10, should be extended to apply to probation revocation proceedings. We conclude that it should not.

Defendant argues that his forced testimony at the probation revocation hearing incriminated him in other criminal proceedings in violation of article I, section 10. Specifically, he argues that his forced admission exposed him to an additional charge of indirect criminal contempt, which, in turn, exposed him to additional fines or punishment. See 
In re Marriage of Betts
, 200 Ill. App. 3d 26, 44 (1990). We disagree with defendant and find that indirect criminal contempt is not the type of criminal proceeding contemplated by article I, section 10, of the Illinois Constitution.

A court is vested with the inherent power to enforce its orders and preserve its dignity by instituting contempt proceedings. 
People v. Warren
, 173 Ill. 2d 348, 368 (1996), citing 
In re Baker
, 71 Ill. 2d 480, 484 (1978). The purpose of criminal contempt proceedings is to punish the contemnor for conduct that offends the dignity of the court, such as disobedience of the court. 
Warren
, 173 Ill. 2d at 368. Criminal contempt sanctions are retrospective in nature and punish the contemnor for past acts which he cannot undo. 
People v. Kaeding
, 239 Ill. App. 3d 851, 854 (1993). Indirect criminal contempt refers to that subcategory of criminal contempt where the contemptuous conduct occurred outside the trial judge’s presence. 
Betts
, 200 Ill. App. 3d at 47-48. “When a probationer violates a condition of probation, he arguably commits an act of indirect criminal contempt and could be subject to both contempt sanctions and resentencing on the conviction for which he is serving probation.” 
People v. Goleash
, 311 Ill. App. 3d 949, 957 (2000); see 
People v. Gallinger
, 191 Ill. App. 3d 488, 490 (1989).

The State concedes that, although the right to self-incrimination applies in indirect criminal contempt proceedings (
In re Marriage of Ruchala
, 208 Ill. App. 3d 971 (1991)), in this case, defendant did not have a realistic expectation that he would be exposing himself to criminal contempt sanctions. Citing 
Murphy
, the State asserts that because defendant was unaware of the possibility that an indirect criminal contempt prosecution could follow, he could not assert the privilege against self-incrimination at the probation revocation hearing. Again, in 
Murphy
 the Court noted that if questions posed to a probationer are relevant to his probationary status and posed “no realistic threat of incrimination,” then the right against self-incrimination would not attach.
 Murphy
, 465 U.S. at 435 n.7, 79 L. Ed. 2d at 425 n.7, 104 S. Ct. at 1146 n.7. We agree.

In 
Martin
, the appellate court concluded that the State may call a defendant to testify at a probation revocation hearing to elicit testimony which would show that the defendant had violated conditions of his probation, “but which would not incriminate him in any other proceedings.” 
Martin
, 226 Ill. App. 3d at 759. Thereafter, the appellate court in 
Bell
 concluded that the “ ‘other proceedings’ ” to which 
Martin
 referred did not include contempt proceedings; rather, they included other “contemporaneous or later criminal proceedings.” 
Bell
, 296 Ill. App. 3d at 150. Further, the appellate court held that because the defendant in that case did not face a realistic threat that his answers would be used against him, there was no violation of his fifth amendment privilege.
 Bell
, 296 Ill. App. 3d at 150; see also
 People v. Baker
, 123 Ill. 2d 233, 244 (1988) (a defendant claiming the privilege must have a reasonable ground to believe that his answers to questions asked might tend to incriminate him).

Applying the above principles to the instant case, we find that defendant’s testimony at his probation revocation hearing was not a violation of defendant’s privilege against self-incrimination, under article I, section 10. Defendant did not face a realistic expectation that his testimony would subject him to indirect criminal contempt. Defendant’s testimony at the probation revocation hearing only impacted his probationary status and did not realistically expose him to any further proceedings, such as indirect criminal contempt sanctions. We decline to depart from the well-reasoned decisions enunciated in 
Murphy
, 
Martin
 and 
Bell
.

In the instant case, defendant was never charged with contempt; thus, he did not incriminate himself in any additional proceeding. Further, the petition to revoke defendant’s probation only informed him that he violated probation when he left the county jail early on January 3, 2000, and left the county jail without cause on January 4, 2000. The petition did not inform defendant that he could or would be subject to indirect criminal contempt charges for failing to follow the court order. See 
People v. Waldron
, 114 Ill. 2d 295, 302-04 (1986) (notice includes the requirement that the contemnor be advised of the possibility that he might be found in contempt). Thus, it is clear that defendant did not face a realistic threat that his answers at the probation revocation hearing would incriminate him in any further proceeding.

Furthermore, we are unaware of any cases in which a defendant has had his probation revoked and been subject to indirect criminal contempt charges as a result of the probation revocation. Such a result is unheard of because of the stringent procedural burdens involved in charging and prosecuting a defendant for indirect criminal contempt. A person who is charged with indirect criminal contempt, unlike a probationer at a probation revocation hearing, is entitled to constitutional protections that are afforded to any other criminal defendant. 
Betts
, 200 Ill. App. 3d at 58; 
Goleash
, 311 Ill. App. 3d at 956. These protections include the privilege against self-incrimination, the presumption of innocence, the State’s burden to prove the charge beyond a reasonable doubt, the right to counsel, the right to a public trial, the right to confront witnesses and to compel testimony, the right to be present at trial, and the right to testify or to remain silent. See 
Betts
, 200 Ill. App. 3d at 58; 
Kaeding v. Collins
, 281 Ill. App. 3d 919, 925 (1996). Moreover, the alleged contemnor must be accorded notice and a fair hearing.
 Waldron
, 114 Ill. 2d at 302-04. Due process requires that the alleged contemnor be informed of the charges against him by information, notice, citation, or rule to show cause; allowed to file an answer to the charges; afforded a full hearing thereon; and allowed a jury trial in serious cases. 
People v. Javaras
, 51 Ill. 2d 296 (1972). It is unlikely that the State would charge a defendant with indirect criminal contempt for the same conduct that constituted the alleged probation violation. Both indirect criminal contempt and probation revocation seek the same result for identical conduct. Yet, it is far less burdensome to resentence a probationer pursuant to a petition to revoke his probation than to seek a criminal contempt sanction.

Accordingly, we find that defendant’s testimony at his probation revocation hearing was not a violation of defendant’s right against self-incrimination, pursuant to article I, section 10.

I. Due Process

Next, defendant relies upon the due process clause of the Illinois and federal constitutions to argue that the State may not call a probationer as an adverse witness at a probation revocation hearing and force him to admit a probation violation. See U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §2. Defendant contends that calling him as an adverse witness is fundamentally unfair because it eliminates the State’s burden of proof, denies him the right to confront and cross-examine witnesses, and denies him the right to counsel. We apply a 
de novo
 standard of review. 
People v. Dilworth
, 169 Ill. 2d 195, 201 (1996).

Due process concerns principles of fundamental justice and fairness. 
Gagnon
, 411 U.S. at 790, 36 L. Ed. 2d at 666, 93 S. Ct. at 1763; see also 
People v. Acevedo
, 216 Ill. App. 3d 195, 201 (1991) (“ ‘due process requires a fair determination that the acts which formed the basis for the revocation petition did occur and that fairness be accorded a defendant during the proceedings’ ”), quoting 
People v. Cox
, 197 Ill. App. 3d 239, 243 (1990). However, due process is a flexible concept, such that “ ‘not all situations calling for procedural safeguards call for the same kind of procedure.’ ” 
People v. Beard
, 59 Ill. 2d 220, 225 (1974), quoting 
Morrissey v. Brewer
, 408 U.S. 471, 481, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600 (1972). Thus, what procedures are required by due process depend upon “ ‘the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.’ ” 
Morrissey
, 408 U.S. at 481, 33 L. Ed. 2d at 495, 92 S. Ct. at 2600, quoting 
Cafeteria & Restaurant Workers Union, Local 473
, 367 U.S. 886, 895, 6 L. Ed. 2d 1230, 1236, 81 S. Ct. 1743, 1748-49 (1961).

In the context of revocation proceedings, the United States Supreme Court has outlined what process is due. See 
Black v. Romano
, 471 U.S. 606, 611-12, 85 L. Ed. 2d 636, 642, 105 S. Ct. 2254, 2257-58 (1985); 
Gagnon
, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756;
 Morrissey
, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593. In so doing, the Court has observed that “revocation *** is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply ***. *** Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special *** restrictions.” 
Morrissey
, 408 U.S. at 480, 33 L. Ed. 2d at 494, 92 S. Ct. at 2600; see also 
Bell
, 296 Ill. App. 3d at 149 (“A probation revocation proceeding has not been arbitrarily labeled a noncriminal proceeding. A sentence of probation is a form of agreement between a defendant and the criminal justice system with severe consequences if the agreement is broken”). Thus, under federal precedent a probationer is entitled to “minimum procedural safeguards required by due process” at a probation revocation proceeding. 
Romano
, 471 U.S. at 610-11, 85 L. Ed. 2d at 642, 105 S. Ct. at 2257; 
Gagnon
, 411 U.S. at 786, 36 L. Ed. 2d at 664, 93 S. Ct. at 1761-62;
 Morrissey
, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593. These minimum requirements include: (1) written notice of the claimed probation violation; (2) disclosure to the probationer of the evidence against him; (3) the opportunity to be heard in person and present testimonial and documentary evidence; (4) the right to confront and cross-examine witnesses (unless the hearing officer can show good cause for not allowing confrontation); (5) a neutral arbiter; and (6) a written statement of the evidence relied upon and the reasons for revoking probation. 
Gagnon
, 411 U.S. at 786, 36 L. Ed. 2d at 664, 93 S. Ct. at 1761-62.

Illinois affords procedural safeguards by statute. 730 ILCS 5/5–6–4(c) (West 2000). Under Illinois law, a probationer is entitled to notice of the petition charging the violation; a court hearing on the violation; the right to be heard in person; the right to confront and cross-examine witnesses; and the right to counsel in all circumstances. 730 ILCS 5/5–6–4(a) through (c) (West 2000); see also
 People v. DeWitt
, 78 Ill. 2d 82, 85 (1979);
 Beard
, 59 Ill. 2d at 224-25. Unlike federal law, the right to counsel and the right to confront and cross-examine are absolute. See, 
e.g.
, 
Gagnon
, 411 U.S. at 786, 36 L. Ed. 2d at 664, 93 S. Ct. at 1761-62 (under federal law a probationer is entitled to a conditional right to confront and cross-examine, and the right to counsel does not attach in all circumstances). Accordingly, in this case we examine whether calling defendant as a witness against himself at his probation revocation hearing violated due process. We hold that it did not.

First, citing to 
People v. Steele
, 283 Ill. App. 3d 413 (1996), defendant contends that calling a probationer as an adverse witness eliminates the State’s burden of proof because in order to prove a probation violation the State must merely force the probationer to admit to the violation. See 730 ILCS 5/5–6–4(c) (West 2000) (providing that “[t]he State has the burden of going forward with the evidence and proving the violation by the preponderance of the evidence”). Defendant’s reliance upon 
Steele
 is misplaced. In 
Steele
, the adult probation department filed a petition to revoke the defendant’s probation because he failed to report to his probation officer. At the probation revocation hearing, the State called the defendant’s probation officer to testify. However, during the hearing, the trial court directed questions to the defendant and “attempted to induce defendant into admitting a probation violation.” 
Steele
, 283 Ill. App. 3d at 415. On appeal, the appellate court held that the trial court “assist[ed] the State in satisfying its burden of proof” and “surrendered its responsibility as the trier of fact.” 
Steele
, 283 Ill. App. 3d at 415. “The trial court’s attempt to provoke defendant into incriminating himself violated his due process rights ***.” 
Steele
, 283 Ill. App. 3d at 416.

In the instant case, the trial court did not assist the State with its burden of proof or surrender its responsibility as the trier of fact. See, 
e.g.
, 
Bell
, 296 Ill. App. 3d at 152 (the trial court did not question the defendant; rather, the State called the defendant as an adverse witness and asked questions concerning his conduct as it was required under the terms of his probation). The State maintained its burden to present the evidence, calling four witnesses to testify, including defendant. Only the State questioned the defendant, as the following exchange between the State and defendant illustrates:

“Q. [Assistant State’s Attorney] And Miss Chezem [the outpatient counselor] had previously told you that you would only be going to classes one day a week, right?

A. [Defendant] Yes.

Q. Why did you let yourself–or sign yourself out the next day, January 4?

A. I just went out to my car and smoked a couple cigarettes and came back into the building.

Q. And you knew that you did not have an appointment at Prairie Center?

A. That’s right.”

Only the trial judge determined whether this conduct violated the terms of defendant’s probation. Therefore, we reject defendant’s contention that calling him as an adverse witness relieved the State of its burden of proof.

Additionally, although in this case the State called four witnesses to establish the probation violation, principles of due process do not prevent the State from calling a single witness, the probationer, to establish the violation. A probationer’s testimony does not necessarily establish the violation. See, 
e.g.
, 
Bell
, 296 Ill. App. 3d at 153 (“Depending on the actual content of defendant’s testimony, the State may have needed more evidence to prove the probation violations”).

Second, defendant maintains that calling him as an adverse witness denies him the right to confront and cross-examine witnesses. See 730 ILCS 5/5–6–4(c) (West 2000). We fail to see how calling defendant as an adverse witness barred his right to confront and cross-examine. The record shows that defendant’s counsel was given the opportunity to cross-examine three witnesses called by the State. Furthermore, on redirect examination by defendant’s own counsel, defendant was given an opportunity to explain the circumstances of his conduct. Defendant’s contention that he was denied the right to confront and cross-examine presupposes that probation revocation proceedings are criminal in nature. As we previously held, probation revocation proceedings are civil.

Last, defendant argues that he was denied the right to counsel. See 730 ILCS 5/5–6–4(c) (West 2000). Defendant associates the right to counsel with counsel’s advice concerning the decision to testify. Simply put, defendant states that the most important function of counsel is the giving of advice whether or not to testify. He argues that this function is rendered meaningless when, against the advice of counsel, he is forced to testify as an adverse witness. Again, defendant’s argument rests upon the contention that probation revocation proceedings are criminal proceedings, in which he has the right not to testify. In the case of a probation revocation hearing, the right to counsel exists to render other important assistance. For example, counsel may cross-examine the State’s witnesses, present witnesses on the defendant’s behalf, or expose weaknesses in the State’s evidence. In this matter, counsel offered this assistance. Defendant was not denied the right to counsel.

Accordingly, we find that defendant’s due process rights were not violated by compelling him to testify as an adverse witness for the State.

III. Day-for-Day Credit

After the trial court found that defendant violated the terms of his probation, defendant was resentenced to another four years’ intensive probation, including 364 days of work release to be served at the Vermilion County Public Safety Building. Relying upon 
People v. Welty
, 275 Ill. App. 3d 10 (1995), defendant argues that he is entitled to “day-for-day credit” for time served in pretrial custody against his later term of periodic imprisonment–the 364 days of work release. Defendant claims that the trial court is required to award day-for-day credit; if he “serves one day” he “gets one day off at the end.” To support his claim, defendant also relies upon section 3–6–3 of the Unified Code of Corrections, which provides, “a prisoner who is serving a term of imprisonment shall receive one day of good conduct credit for each day of his or her sentence of imprisonment or recommitment under Section 3–3–9. Each day of good conduct credit shall reduce by one day the prisoner’s period of imprisonment or recommitment under Section 3–3–9.” 730 ILCS 5/3–6–3(a)(2.1) (West 2000).

As an initial matter, we reject defendant’s claim that he is entitled to day-for-day credit under the reasoning in 
Welty
. Like the appellate court below, we find that “the language used in 
Welty
 is confusing, [and] the result the court reached did not appear to grant the defendant 156 days’ credit for the 78 that he actually served in custody prior to sentencing.” 319 Ill. App. 3d at 593. To the extent 
Welty
 holds that day-for-day credit applies to terms of periodic imprisonment, it is overruled. Defendant’s claim is best resolved by examining the statutory language at issue.

“Day-for-day” credit is a phrase used to describe the system of mandatory “good conduct credit” contained in section 3–6–3 of the Unified Code of Corrections. 730 ILCS 5/3–6–3 (West 2000); see also 
People v. Gooden
, 189 Ill. 2d 209, 223 (2000) (noting the day-for-day good-conduct credit enactment); 
People v. Cloutier
, 178 Ill. 2d 141, 151 (1997) (referring to the day-for-day good-conduct credits contained in section 3–6–3(a)(2));
 Johnson v. Franzen
, 77 Ill. 2d 513, 517-18 (1979) (discussing the history of the credit system). The term “day-for-day” does not appear in the express language of section 3–6–3. See 730 ILCS 5/3–6–3 (West 2000). However, the term “day-for-day” is used to describe the current credit system.
 Gooden
, 189 Ill. 2d at 223; 
Cloutier
, 178 Ill. 2d at 151. Under the day-for-day system, a felon may earn credit for good behavior once he or she begins to serve the prison sentence. For clarity, we note that the credit system contained in section 3–6–3 was first enacted in 1978 and replaced the system of indeterminate sentencing. See Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005–8–1. Prior to 1978, under the system of indeterminate sentencing, the Department of Corrections awarded mandatory “statutory 
good time
 credits,” and discretionary good-conduct credits, commonly called “compensatory 
good time
 credits.” (Emphases added.) Ill. Rev. Stat. 1977, ch. 38, par. 1005–8–1, amended by Pub. Act 80–1099, eff. February 1, 1978. Today, credits are no longer referred to as good-time credits.

Turning to section 3–6–3 of the Unified Code of Corrections, we find that it does not support defendant’s claim that the trial court was required to award him day-for-day credit for time served in pretrial custody against the later term of periodic imprisonment. 730 ILCS 5/3–6–3(a)(2.1) (West 2000). Section 3–6–3 of the Unified Code of Corrections applies only to inmates in the Department of Corrections. See 730 ILCS 5/3–6–3(a)(1) (West 2000) (“rules and regulations for the early release on account of good conduct of persons committed to the Department”); 730 ILCS 5/3–1–2(e) (West 2000) (“ ‘Department’ means the Department of Corrections of this State”). Defendant is not an inmate in the Department of Corrections, but rather is confined to the Vermilion County Public Safety Building, a county facility. The County Jail Good Behavior Allowance Act (730 ILCS 130/1 
et seq.
 (West 2000)) governs the diminution of sentence of prisoners in county facilities. Therefore, section 3–6–3 does not apply.

Even if we were to conclude that defendant’s confinement to a county facility did not affect his eligibility for good-conduct credit contained in section 3–6–3, defendant would still be ineligible to receive credit because he was confined to “periodic imprisonment.” “A sentence of periodic imprisonment is a sentence of imprisonment during which the committed person may be released for periods of time during the day or night or for periods of days, or both ***.” 730 ILCS 5/5–7–1(a) (West 2000). Defendant’s sentence of 364 days of work release is a sentence of “periodic imprisonment.” Section 5–7–1(d) states, “[n]o sentence of periodic imprisonment shall be subject to the good time credit provisions of Section 3–6–3 of this Code.” 730 ILCS 5/5–7–1(d) (West 2000).

Further, because we find that the County Jail Good Behavior Allowance Act governs inmates in county facilities in this matter, we examine defendant’s contention under its provisions. 730 ILCS 130/1 
et seq.
 (West 2000). Under section 3 of the County Jail Good Behavior Allowance Act, “[t]he good behavior of any person who commences a sentence of confinement 
in a county jail for a fixed term of imprisonment
 *** shall entitle such person to a good behavior allowance ***.” (Emphasis added.) 730 ILCS 130/3 (West 2000). Further, the Act provides that the good-behavior allowance “shall not apply to individuals sentenced for a felony to probation or conditional discharge where a condition of such probation or conditional discharge is that the individual serve a sentence of periodic imprisonment ***.” 730 ILCS 130/3 (West 2000). Clearly, defendant’s sentence of periodic imprisonment makes him ineligible for good-behavior allowance credit. We find that the trial court did not error by denying defendant’s request for day-for-day credit.

CONCLUSION

For the forgoing reasons, the judgment of the appellate court affirming the trial court judgment is affirmed.

Affirmed
.

JUSTICE FREEMAN, specially concurring:

I join in the result reached by the majority because the State did not charge defendant with indirect criminal contempt and the circuit court did not impose any punishment for contempt upon defendant. I do so with the understanding that where the State calls a defendant as an adverse witness at a probation revocation hearing, the defendant’s answers may not be used to support a finding of criminal contempt. 

At least two Illinois courts have held that sentencing for contempt of court is a proper sanction for a violation of probation. See 
People v. Gallinger
, 191 Ill. App. 3d 488, 490 (1989) (“The contempt power of the circuit court is a proper sanction for a violation of probation”); 
People v. Patrick
, 83 Ill. App. 3d 951, 954 (1980) (“Because of the court’s inherent contempt power and because the comments of the group drafting the Unified Code of Corrections indicate that the format of the Code was adopted with a recognition of the existence of that inherent power as one added sanction, we deem the court to have possessed power to punish for contempt in this case”); see also 
People v. Colclasure
, 48 Ill. App. 3d 988, 991 (1977) (“Because of the statutory history of use of the contempt sanction for probation violations, the similarity between sentences of probation and periodic imprisonment and analogy to the common law treatment of sanctioning willful violations of other court orders by contempt, we conclude that a trial court is empowered to punish a willful violation of a condition of periodic imprisonment by holding the violator in indirect criminal contempt”). Further, as noted in the council commentary to the probation revocation statute (730 ILCS Ann. 5/5–6–4, Council Commentary, at 95 (Smith-Hurd 1997)), “the court retains the sanctions of criminal contempt and fining the offender for violating the conditions of probation.” Because a defendant may be sanctioned for criminal contempt for a violation of the conditions of probation, it is imperative that the defendant’s answers at the probation revocation hearing not be used to support a finding of contempt. Neither may the State use the fruits of the defendant’s testimony against him in a proceeding for contempt. See 
McCracken v. Corey
, 612 P.2d 990 (Alaska 1980) (where the court used its inherent supervisory powers to exclude the parolee’s testimony as well as the fruits of the parolee’s revocation hearing for purposes of the parolee’s subsequent criminal trial). A defendant may not be required to choose between answering the State’s questions, thus supplying the foundation for a finding of contempt, and jeopardizing his conditional liberty by remaining silent. See 
Minnesota v. Murphy
, 465 U.S. 420, 79 L. Ed. 2d 409, 104 S. Ct. 1136 (1984). However, “a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination.” 
Murphy
, 465 U.S. at 435 n.7, 79 L. Ed. 2d at 425 n.7, 104 S. Ct. at 1146 n.7.

CHIEF JUSTICE HARRISON, dissenting:

Article I, section 10, of the Illinois Constitution of 1970 provides: “[n]o person shall be compelled in a criminal case to give evidence against himself ***.” Ill. Const. 1970, art. I, §10. For the reasons set forth in my dissenting opinion in 
People v. Miller
, No. 91241 (May 23, 2002), probation revocation proceedings are part of a “criminal case” within the meaning of that provision. Accordingly, the circuit court should not have required Lindsey to testify as an adverse witness at his probation revocation hearing.

Because Lindsey’s privilege against self-incrimination was violated when he was compelled to testify, we should reverse the appellate court’s judgment affirming the order of the circuit court which revoked Lindsey’s probation and resentenced him. The cause should be remanded to the circuit court for a new probation revocation hearing. We should further hold that the circuit court may not require Lindsay to take the witness stand at the new hearing and that it is prohibited from making any presumptions based on the absence of testimony by him. See 725 ILCS 5/115–16 (West 2000) (in a criminal case or proceeding, a defendant’s “neglect to testify shall not create a presumption against [him]”). For the foregoing reasons, I dissent.

JUSTICE KILBRIDE joins in this dissent.