2022 IL App (4th) 210391

NO. 4-21-0391

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 2, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Vermilion County |
| JAMES CURTIS, | ) | No. 20CF155 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles C. Hall, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1 On March 26, 2021, the trial court granted the State's petition to revoke defendant James Curtis's conditional discharge. On July 2, 2021, the court sentenced defendant to six years in prison for aggravated domestic battery (strangulation) (720 ILCS 5/12-3.3(a-5) (West 2020)). Defendant appeals, arguing (1) the State deprived him of his statutory rights to confront and cross-examine the witnesses against him by destroying a recording of a video screen visit between defendant and Briana Guerrero while defendant was in the custody of the Vermilion County jail and (2) his revocation counsel provided ineffective assistance by failing to obtain a copy of the recorded video screen visit before it was destroyed by the Vermilion County Sheriff's Office. We affirm.

¶ 2 I. BACKGROUND

¶ 3 In September 2020, defendant pled guilty to one count of aggravated domestic

battery (720 ILCS 5/12-3.3(a-5) (West 2020)) in exchange for a sentence of 30 months' conditional discharge in case No. 20-CF-155. The trial court accepted the plea and imposed the agreed upon sentence with the condition defendant would have no harmful or offensive contact with Guerrero, the victim of the aggravated domestic battery.

¶ 4        On October 15, 2020, the State filed a petition to revoke defendant's conditional discharge. According to the petition, defendant violated the conditions of his conditional discharge by being charged with domestic battery (subsequent offense) of Guerrero in Vermilion County case No. 20-CF-672 and having harmful or offensive contact with Guerrero. The allegations in the petition pertained to defendant's actions on October 6 and 7, 2020.

¶ 5        On March 22, 2021, defendant filed a motion asking the trial court to make a "negative inference" against the State for violating a discovery request by failing to preserve a recorded video screen visit on October 20, 2020, between defendant and Guerrero while defendant was in the Vermilion County jail. According to defendant's motion, on October 9, 2020, he filed a request for discovery in case No. 20-CF-672, which included requests for recorded statements of both the State's witnesses and defendant. The motion indicates defense counsel sent an e-mail to "counsel for the State, indicating that he had reason to believe relevant statements were made during a video screen visit between [Guerrero] and [d]efendant on October 20, 202[0,] and asking that said visit be preserved and disclosed." Defendant attached an e-mail to Maurice Hunt with the state's attorney's office dated November 13, 2020, referencing case No. 20-CF-672. The State later informed defense counsel the recording had been deleted after 30 days pursuant to policy.

¶ 6        At a hearing on March 22, 2021, the State indicated it was electing to proceed on the petition to revoke conditional discharge. As to defendant's motion for a "negative inference," defense counsel indicated he was not alleging the State acted in bad faith in deleting the recording

of the video screen visit. However, he argued defendant was still entitled to some kind of sanction against the State. The State pointed out defendant failed to put forth evidence that anyone from the state's attorney's office was aware of defendant's request to preserve the recording of the video screen visit or agreed to obtain the recording from the jail for defendant. The State also noted it knew of no understanding between defense counsel and the State regarding the preservation of the recorded visit. Further, the State indicated this was not a situation where it knowingly had possession of evidence which was destroyed. Instead, according to the State, this was a situation where defendant brought a jailhouse conversation to his attorney's attention, and the State was not required to chase down defendant's leads for him.

¶ 7    Defense counsel responded that the recording was in the possession of the sheriff's department, which is an agent of the State. However, defense counsel acknowledged he did not know for certain what was on the recording.

¶ 8    On March 24, 2021, the trial court denied defendant's motion for a "negative inference," explaining defendant provided no offer of proof as to the substance of the statements made during the video screen visit and nothing in the record enabled the court to determine whether the statements were relevant or material to the issues in this case. While the State did not dispute defense counsel sent an e-mail to someone in the state's attorney's office, the prosecutor indicated he was not aware of the e-mail. He also noted the jail's normal procedure was to keep recordings for only 30 days. Defendant did not allege bad faith on the part of the State. However, defendant asked for sanctions pursuant to Illinois Supreme Court Rule 415 (eff. Oct. 23, 2020). In denying defendant's motion, the court stated:

> "The Defendant could have sent a subpoena requesting production of the video tape of the visit or filed a motion with the Court for an order to preserve and to produce

said video. That was not done. There is insufficient evidence in the record for the Court to make a finding of a discovery violation by the State; or, to determine what, if any, sanction should be imposed if the Court found a discovery violation. Based on the forgoing points[,] the Court hereby denies Defendant's Motion for Negative Inference."

¶ 9 On March 25, 2021, the trial court held a hearing on the State's petition to revoke defendant's conditional discharge. Defendant renewed his motion for a "negative inference" based on the deletion of the recorded video screen visit. According to defense counsel, his discovery motion in case No. 20-CF-672 was sufficient to trigger the State's duty to preserve the recording of the video screen visit. Defense counsel then made the following offer of proof as to what the recording would have shown:

"[T]hat video visit would reveal that there was a video visit between [defendant] and Guerrero; that she was rude and belligerent as part of that visit. That she had made statements such as that James didn't hit her on October 7th, that [defendant] didn't kick in the door on October 7th[,] and that she said those things because she didn't want him to be with another woman and that if she found out that James had gotten another woman pregnant that she would make sure that he never got out of jail."

The trial court again denied defendant's motion for an adverse inference.

¶ 10 In its opening statement, the State noted defendant pled guilty to aggravated battery (strangulation) and by his plea admitted to strangling Guerrero. According to the State, less than a month after pleading guilty to strangling Guerrero, defendant engaged in harmful and offensive contact with Guerrero and was charged with battering Guerrero. Defense counsel responded the

- 4 -

State's entire case was based on Guerrero's statements, Guerrero was high on the night in question, and she believed defendant was cheating on her. Defense counsel indicated defendant did not hit Guerrero, grab her face, or pull her hair. However, he did grab her arms to keep her from hitting him. Counsel also stated the door to the residence was damaged prior to October 7.

¶ 11    The trial court took judicial notice of the entire court file in this case, specifically the sentencing order placing defendant on conditional discharge with conditions that included not violating any criminal statutes or having harmful or offensive contact with Guerrero.

¶ 12    Guerrero testified she and defendant were living together in October 2020. She believed they would get married. She was on probation and had a prior criminal conviction. She admitted abusing drugs before June 2018, including methamphetamines, cocaine, marijuana, ecstasy, and alcohol, but had not used drugs since then.

¶ 13    On October 6 between 11 p.m. and midnight, defendant came home intoxicated. Guerrero denied drinking or taking drugs that day. Defendant was loud and obnoxious and said he wanted to lie down because he was angry with Guerrero. Defendant stripped down to a pair of shorts and then went to the kitchen to eat. While defendant was eating, Guerrero went into the bedroom and started picking up defendant's clothes and found a bra that was not hers. She threw the bra at defendant and told him to leave. Defendant laughed at her. She continued to tell him to leave, and he became angry.

¶ 14    Guerrero then went to the bedroom, grabbed defendant's clothes, walked back to the kitchen, and threw away defendant's plate of food. She then pushed him out of the house. He came back to the door and told her to let him inside, but she told him to go away. When he was walking away, she opened the door to hear what he was yelling. She then called 911 and locked her door. Defendant then came back to the door. Guerrero hung up from the 911 call and then was

talking to a female friend when defendant kicked in her door. Defendant grabbed her hair and dragged her from the living room to a bedroom. He was hitting her and tried to lock her in the bedroom, but she kicked her way out of the room. Defendant then started packing his things. She called 911 again to report defendant had kicked her door in. She indicated defendant also threw her into the wall, which made a large hole in the wall. She also said defendant picked up a coffee table and tried to hit her with it, hitting the ceiling before he put it down. She then grabbed a hammer and threatened him with it.

¶ 15    The State introduced photographs taken by the police on October 7 of Guerrero, defendant, and the residence. The pictures showed damage to the front door, ceiling, coffee table, and wall. Guerrero indicated the marks on her back, face, and arms in the pictures were caused by defendant when he dragged, hit, and held her down. The State also introduced Guerrero's recorded 911 calls. In one 911 call, Guerrero testified she was not hurt but said defendant had kicked her door in. She testified she was scared when she said she was not hurt because he was right in front of her. She gave the police a recorded statement when they arrived.

¶ 16    The State introduced the recordings of two calls defendant made to Guerrero from the jail. Defendant denied cheating on Guerrero but said he was mad because of Guerrero's treatment of him. Defendant apologized and said he needed Guerrero. Defendant indicated he "f***** up" and "did that s***." He also said he could not talk about the incident on the phone. He said he needed Guerrero and asked her not to give up on him. Later in the conversation, Guerrero told defendant he knew what he did and why she called the police, even though she said she never would. Guerrero told defendant he needed counseling and Alcoholics Anonymous if he did not know what he did.

¶ 17    In another call, defendant told Guerrero he had been charged with four counts of

aggravated domestic battery. Guerrero said her body and face hurt. Defendant then told her the calls were being recorded. Defendant also told Guerrero to say she called the police because she caught defendant kissing another man.

¶ 18            Guerrero testified she visited defendant twice at the jail.

¶ 19            On cross-examination, Guerrero indicated the state's attorney would decide whether to revoke her probation if she violated a term of her probation. If her probation was revoked, she faced up to six years in prison. When asked about letters allegedly sent by her to defendant at the jail, Guerrero denied sending defendant letters postmarked October 24 and November 25. She said the handwriting on the letters was not hers. She did admit to sending defendant four pictures of her in an envelope postmarked October 16, 2020.

¶ 20            Guerrero also believed she had a video screen visit with defendant on October 20, 2020. During the visit, she referred to defendant as her husband. According to Guerrero, defendant did not say he wanted to terminate their relationship. Guerrero also denied saying defendant did not hit her or kick in her door on October 7, 2020. She also denied telling defendant she called the police on him because she did not want him to leave with another woman. Finally, Guerrero denied telling defendant she would make sure he never got out of jail if he had gotten another woman pregnant.

¶ 21            Officer Brandon Phillips of the Danville Police Department testified he was on duty around 3 a.m. on October 7, 2020, and was dispatched to 1015 Giddings Street in Danville, where he met with Guerrero, who was outside when he arrived. Guerrero had red marks on the left side of her face and the inside of her left bicep. She appeared to have been through some sort of trauma and was distraught, distressed, and frantic. She also looked like she had been crying. He took pictures of her injuries and the damage inside the house. According to Phillips, the damage to the

entry door correlated with Guerrero's statement to him. Officer Phillips spoke with defendant and testified defendant denied kicking in any door or touching Guerrero. Phillips did not notice any injuries to defendant.

¶ 22        Defendant testified he went to see Guerrero on October 6, 2020, to talk about reconciling. He arrived at the house around 11 p.m. and was intoxicated. The front door and other parts of the house were already damaged when he arrived because of a fight between Guerrero and another woman.

¶ 23        Defendant was carrying a duffel bag that belonged to a female friend's daughter. He saw Guerrero appeared to be smoking crystal methamphetamine. He went into the bedroom and started putting his clothes in the bag. When Guerrero saw a bra in the bag, she started cursing, accusing defendant of cheating on her, and hitting him in the head and back. He turned and grabbed Guerrero's arms to keep her from hitting him. She got away from him and grabbed a hammer, which she started swinging at him. He denied ever picking up the coffee table. His friend, who was waiting in the car outside, then honked her horn. Guerrero went to the window to see who was honking. Defendant grabbed the hammer out of her hand and tossed it behind the couch. At that point, Guerrero tried to go out the front door to confront defendant's friend, but defendant stopped her. Guerrero then went out another door toward the lady waiting in the car. Defendant again started packing up his clothes in white garbage bags. Guerrero came back into the house and said she called the police and told defendant he was not leaving with the girl.

¶ 24        With regard to the recorded jailhouse phone calls, defendant said he was referring to cheating on Guerrero when he said he "did that s***." He admitted he lied to Guerrero about where the bra in the duffel bag came from. He denied trying to reconcile with Guerrero or salvage their relationship while he was in jail. He also denied he kicked in Guerrero's door or hit, kicked,

or dragged Guerrero. He did admit grabbing Guerrero's arms to keep her from hitting him. Defendant testified the letters sent to him at the jail were in Guerrero's handwriting. The letter postmarked on October 24, 2020, stated Guerrero would not have called the police if she was not high. The letter postmarked November 25, 2020, stated Guerrero told the state's attorney defendant did not hit her, she planned to invoke her fifth amendment right and not testify against defendant, and the state's attorney threatened her with jail time. As previously noted, Guerrero testified she did not send defendant those two letters.

¶ 25    Defendant testified he and Guerrero had a video screen visit on October 20, 2020. She was upset and then mad during the visit. She asked him about the girl in the car outside her house on October 7, whether defendant was cheating on her, and whether the lady was pregnant with defendant's baby. The following exchange then occurred between defense counsel and defendant regarding Guerrero's alleged statements concerning the events of October 7.

"Q. Okay. What did she say?

A. She was like she was sorry for telling the police that I hit her and she was sorry for everything that happened, telling the police that I kicked in the door and—

Q. Did she make any statements about why she said those things to the police?

A. Yes, because she—she thought I was fittin [*sic*] to leave with that girl, she thought I was cheating with our friend.

Q. *** Did she make any comments in relation to you potentially being or not being in a relationship with the woman who was present on October 7th?

A. She ask [*sic*] me was I gonna [*sic*] be in a relationship with her, she just asked me what am I gonna [*sic*] leave her to be with the girl and was the girl

pregnant with my—my baby.

&ast;&ast;&ast;

Q. Did she make any comments in relation to you being or not being in jail?

A. Yeah, she said if she found out that the baby was mine that she gonna [*sic*] make sure that I don't get out of jail, in those words."

Defendant stated he let his attorney know about Guerrero's statements the next day.

¶ 26 As for the events on October 7, 2020, defendant denied hitting Guerrero or pulling her hair. He did admit grabbing her arms to keep her from attacking him but denied causing any of the marks on Guerrero's body, other than possibly the marks on her arms.

¶ 27 On cross-examination, the State pointed out defendant told Guerrero multiple lies, tried to coach her about what to tell the state's attorney, and reminded Guerrero their conversations were being recorded.

¶ 28 The State and defendant stipulated Bobbi Harbacek, a correctional officer with the Vermilion County Sheriff's Office, would testify she monitored a video screen visit between defendant and Guerrero, which lasted between 17 and 20 minutes, during at least one shift in the latter part of October 2020. Harbacek did not hear or remember the content of most of the conversation between defendant and Guerrero. However, Harbacek remembered near the end of the visit that defendant told Guerrero he no longer wanted to see or be with Guerrero. Guerrero then became upset, loud, rude, and belligerent. Harbacek had to tell her to calm down more than once. Guerrero was crying when she left the facility.

¶ 29 In ruling on the petition to revoke defendant's conditional discharge, the trial court found defendant's testimony was not credible or believable on key aspects of the charges. The court granted the State's petition, finding the State proved defendant engaged in offensive or

harmful contact with Guerrero.

¶ 30　　　　On June 29, 2021, the trial court sentenced defendant to a six-year term of imprisonment for his aggravated domestic battery (strangulation) (720 ILCS 5/12-3.3(a-5) (West 2020)) conviction. On July 1, 2021, defendant filed a motion to reconsider his sentence, which was denied.

¶ 31　　　　This appeal followed.

¶ 32　　　　　　　　　　　II. ANALYSIS

¶ 33　　　　On appeal, defendant's arguments center on the deletion of the recorded October 20, 2020, video screen visit between defendant and Guerrero. According to defendant's brief, on October 21, 2020, defendant told his revocation counsel about statements Guerrero allegedly made during their visit the day before and asked counsel to obtain a copy of the recorded conversation. Approximately 25 days later, an e-mail dated November 13, 2020, was sent by defense counsel to a prosecutor in the Vermilion County State's Attorney's Office asking the prosecutor to preserve the recording of the video screen visit. However, after 30 days passed following the October 20, 2020, visit, the recording of the visit between defendant and Guerrero was deleted pursuant to the policy of the sheriff's department. We note the e-mail sent to the prosecutor referenced case No. 20-CF-672 but not the revocation proceeding in this case.

¶ 34　　　　Defendant does not direct this court to anything in the record indicating anyone in the state's attorney's office saw defense counsel's e-mail or knew defense counsel wanted the recording preserved before it was deleted. Further, defendant points to nothing in the record indicating the sheriff's office was asked by anyone to preserve the recorded video screen visit.

¶ 35　　　　　　　　A. Deletion of the Recorded Video Screen Visit

¶ 36　　　　Defendant argues the State deprived him of his statutory right to confront and

- 11 -

cross-examine witnesses against him because the recording was deleted by the Vermilion County Sheriff's Office. Defendant acknowledges he failed to preserve this issue on appeal but asks us to consider the issue pursuant to the plain-error doctrine. The plain-error doctrine allows a reviewing court to review a forfeited error that is clear and/or obvious when (1) the evidence in a case was so closely balanced that the error alone threatened to tip the scales of justice against the defendant regardless of the seriousness of the error or (2) the error was so serious it affected the fairness of the defendant's trial and challenged the integrity of the judicial process regardless of how close the evidence was in the case. *People v. Sebby*, 2017 IL 119445, ¶¶ 49-51, 89 N.E.3d 675. The defendant bears the burden of persuasion under both prongs of the rule. *People v. Solis*, 2019 IL App (4th) 170084, ¶ 29, 138 N.E.3d 247. A defendant must first establish a clear or obvious error occurred. *Sebby*, 2017 IL 119445, ¶ 49.

¶ 37        Defendant relies on section 5-6-4(c) of the Unified Code of Corrections (Corrections Code) (730 ILCS 5/5-6-4(c) (West 2020)) to show the State violated his statutory rights of confrontation and cross-examination at the conditional discharge revocation proceeding by deleting the recorded interview. Section 5-6-4(c) provides: "The State has the burden of going forward with the evidence and proving the violation by the preponderance of the evidence. The evidence shall be presented in open court with the right of confrontation, cross-examination, and representation by counsel." 730 ILCS 5/5-6-4(c) (West 2020).

¶ 38        Defendant does not contend the sheriff's department knew defendant wanted the recording preserved when it was deleted. Further, while the record contains an e-mail from defense counsel to one individual in the state's attorney's office asking for a copy of the recording, the e-mail was sent only five days before the recording was deleted and referenced only case No. 20-CF-672. Defendant does not provide this court with a citation of the record showing anyone in the

state's attorney's office saw the e-mail before the recording was deleted by the sheriff's office.

¶ 39        Defendant cites *People v. Taylor*, 54 Ill. App. 3d 454, 457, 369 N.E.2d 573, 576 (1977), for the proposition the right to confrontation is violated when a State actor destroys evidence that a defendant could have used to confront the evidence against him. The Fifth District stated:

> "[D]efendant in the instant case was denied due process of law and the opportunity for meaningful confrontation of the witnesses against him by the State's unnecessary destruction of the allegedly prohibited substance which he allegedly delivered to agents of the State, and *** his conviction must be reversed. *** [W]henever an accused seeks by timely motion a sample of the allegedly controlled substance, so that it can be subjected to independent testing under appropriate safeguards as may be deemed necessary by the trial court [citation], a heavy burden devolves upon the State either to produce a testable sample or to prove by clear and convincing evidence that the destruction of all of the substance in its possession was necessary. If it can do neither, then it should not, as a matter of fundamental fairness, be permitted to introduce into evidence the results of its tests. As the destruction here was clearly unnecessary, the State's expert testimony should have not been admitted, and defendant's conviction must be reversed ***." *Taylor*, 54 Ill. App. 3d at 457-58.

¶ 40        However, after *Taylor* was decided, the United States Supreme Court in *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988), stated:

> "The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*[ *v. Maryland*, 373 U.S. 83 (1963)], makes the good or bad faith of the State

- 13 -

irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said that that it could have been subjected to tests, the results of which might have exonerated the defendant. Part of the reason for the difference in treatment is found in the observation made by the Court in [*California v. Trombetta*, 467 U.S. 479, 486 (1984)], that '[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed.' Part of it stems from our unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause *** as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."

The Illinois Supreme Court relied on *Youngblood* in *People v. Ward*, 154 Ill. 2d 272, 299, 609 N.E.2d 252, 262 (1992), holding "no due process violation occurred because there was no evidence presented which demonstrated bad faith on the part of the police." In *People v. Tsombanidis*, 235

Ill. App. 3d 823, 832, 601 N.E.2d 1124, 1131 (1992), the First District held *Youngblood* overruled *Taylor*.

¶ 41 In this case, the recording of the video screen visit was not exculpatory based on defendant's testimony. Instead, it was only potentially useful evidence. Defendant does not argue the State acted in bad faith when the recording was deleted. However, defendant argues the issue of bad faith is irrelevant to his argument because he is not making a due process argument. Instead of arguing his due process rights were violated by the deletion of the video, defendant is arguing that the State violated his statutory rights to confrontation and cross-examination pursuant to section 5-6-4(c) of the Corrections Code (730 ILCS 5/5-6-4(c) (West 2020)) when the sheriff's office took the affirmative action of deleting the recorded video screen visit. Regardless, defendant argues *Youngblood* did not address or overrule the part of *Taylor*'s holding regarding a defendant's confrontation rights. Defendant contends *Youngblood* and *Tsombanidis* are both silent as to the issue of confrontation.

¶ 42 We find defendant's argument fails to appreciate that his confrontation rights are encompassed within his due process rights. In *People v. Lindsey*, 199 Ill. 2d 460, 472, 771 N.E.2d 399, 408-09 (2002), our supreme court stated: "Due process concerns principles of fundamental justice and fairness. [Citations.] However, due process is a flexible concept, such that not all situations calling for procedural safeguards call for the same kind of procedure." (Internal quotations omitted.) The procedures required by due process are dependent on the nature of the government function involved and the private interest affected by the governmental action. *Lindsey*, 199 Ill. 2d at 472. Our high court noted the United States Supreme Court has outlined the process due in the context of revocation proceedings. *Lindsey*, 199 Ill. 2d at 472. According to our supreme court:

"In so doing, the Court has observed that 'revocation *** is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply ***. *** Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special *** restrictions.' [Citations.] Thus, under federal precedent a probationer is entitled to 'minimum procedural safeguards required by due process' at a probation revocation proceeding. [Citations.] These minimum requirements include: (1) written notice of the claimed probation violation; (2) disclosure to the probationer of the evidence against him; (3) the opportunity to be heard in person and present testimonial and documentary evidence; (4) the right to confront and cross-examine witnesses (unless the hearing officer can show good cause for not allowing confrontation); (5) a neutral arbiter; and (6) a written statement of the evidence relied upon and the reasons for revoking probation. [Citation.]" *Lindsey*, 199 Ill. 2d at 473.

Our supreme court went on to note that under Illinois law, "[u]nlike federal law, the right to counsel and the right to confront and cross-examine are absolute." *Lindsey*, 199 Ill. 2d at 474.

¶ 43    However, the fact section 5-6-4(c) of the Corrections Code (730 ILCS 5/5-6-4(c) (West 2020)) gives defendant a nonconditional right to confront and cross-examine during a revocation proceeding does not mean *Youngblood*'s bad faith test is inapplicable to the situation here. Because defendant does not argue the sheriff's office acted in bad faith when it deleted the recording of the video screen visit, defendant cannot establish his right to confront and cross-examine during the revocation proceedings was violated. Defendant was able to confront and cross-examine the State's evidence against him, including Guerrero's testimony. Defendant's

argument implies that the bad faith inquiry is relevant in a criminal prosecution but irrelevant in a civil revocation proceeding. In essence, defendant's position would mean section 5-6-4(c) affords him a right of cross-examination and confrontation in his revocation proceedings which would have been more extensive than his right of cross-examination and confrontation had he been prosecuted in case No. 20-CF-672. However, defendant provides no analysis why a defendant in a revocation proceeding is statutorily entitled to more protection than a defendant in a criminal trial in instances where evidence was not preserved. As such, we are not persuaded the General Assembly intended a defendant in a revocation proceeding to have a right of cross-examination and confrontation beyond what is required by due process in a criminal trial.

¶ 44    Defendant also attempts to argue this court should treat the deletion of evidence differently than the failure to preserve evidence. However, defendant fails to cite any authority why this distinction matters, and we see no reason why it should. As the Supreme Court noted in *Youngblood*, the police do not have an absolute duty to preserve *or* retain "all material that might be of conceivable evidentiary significance in a particular prosecution." *Youngblood*, 488 U.S. at 58. Because defendant has failed to establish a clear or obvious error occurred, we need not proceed further with the plain-error analysis.

¶ 45                                B. Effective Assistance of Counsel

¶ 46    Defendant next argues his revocation counsel was ineffective because he failed to obtain a copy of the recorded video screen visit before it was deleted. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

¶ 47    Based on the record in this case, defendant cannot establish he was prejudiced by

his attorney's failure to obtain a copy of the recorded video screen visit before it was deleted. At the start of the revocation hearing, defendant's attorney said the video would have shown Guerrero admitted defendant did not hit her or kick her door in on October 7 and called the police because she did not want defendant to be with another woman. However, defense counsel was not present for the October 20 video screen visit.

¶ 48 Defendant, who was present for the video screen visit, may have communicated to his attorney that Guerrero admitted she made up the allegations against defendant when defendant was not under oath. However, when defendant testified at the revocation hearing about what Guerrero said during the video screen visit, he did not testify Guerrero said she lied to the police regarding what happened on October 7. Instead, defendant only testified Guerrero said she told the police about what defendant had done because she thought he was cheating on her. Defendant also said Guerrero indicated she would make sure he did not get out of jail for a long time if she found out defendant had impregnated another woman. This was not an admission her allegations defendant abused her and kicked in her door were untrue.

¶ 49 Even assuming, *arguendo*, the recording of the October 20, 2020, video screen visit was consistent with defendant's testimony, a reasonable probability does not exist the video would have led to a different outcome in this case. The State presented sufficient evidence against defendant that he kicked in Guerrero's door and physically assaulted her. The State's case included the testimony of a responding police officer, photographs of Guerrero's injuries and damage to Guerrero's residence taken the night of the incident, recordings of Guerrero's 911 calls, and recordings of phone calls between defendant and Guerrero after defendant was arrested. After observing defendant's testimony and hearing the other evidence in this case, the trial court found defendant's testimony was not credible. Defendant cannot show a reasonable probability exists a

recording of Guerrero apologizing to defendant for calling the police would have made a difference in the outcome of this case.

¶ 50                                    III. CONCLUSION

¶ 51          For the reasons stated above, we affirm the trial court's judgment.

¶ 52          Affirmed.

*People v. Curtis*, 2022 IL App (4th) 210391

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Vermilion County, No. 20-CF-155; the Hon. Charles C. Hall, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Roxanna A. Mason, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Jacqueline M. Lacy, State's Attorney, of Danville (Patrick Delfino, David J. Robinson, and Douglas Malcolm, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |